**FOTOMAT CORPORATION, Plaintiff,**

v.

**Steven COCHRAN, d/b/a Quick Stop Photo, Defendant.**

**No. 75-196-C5.**

United States District Court,
D. Kansas.

April 12, 1977.

Welton B. Whann, San Diego, Cal., Michael A. Kaplan, La Jolla, Cal., John E. Wilkinson, Topeka, Kan., for plaintiff.

David R. Gilman, Overland Park, Kan., for defendant.

### DECISION OF THE COURT

ROGERS, District Judge.

This is an action for trademark infringement and unfair competition arising from defendant's use of a building design in the provision of drive-in photographic development services which allegedly infringes plaintiff's trademarked building design.

■ Defendant counterclaimed, arguing that plaintiff's federal registered trademark should be cancelled as unprotectable on non-functionality groups. At the end of the defendant's evidence, we ruled against the counterclaim as a matter of law, concluding that defendant had not met its burden of proof in challenging a presumptively valid federal trademark registration. We felt the evidence clearly showed that plaintiff's trademark was distinctive and arbitrary. The shape of plaintiff's building design with specific emphasis as to the shape of the roof, was not dictated by the function it was to serve. Nor would enjoining others from using the building design inhibit competition in any way, for defendant's own expert testified that many other designs would provide all the "functional" benefits which defendant claimed inhered in this particular design. While this particular design did shelter the plaintiff's personnel and stock from the elements, it did so no better than a myriad of other building designs. Therefore, while the design had some small element of functionality, it was not "in essence" functional. An analogy can be drawn from this wording in *Best Lock Corporation v. Schlage Lock Company,* 413 F.2d 1195, 1199, 56 CCPA 1472 (1969):

> . . . some articles, made in a purely arbitrary configuration, (e. g., the wine bottle considered in *Mogen David*) [Application of Mogen David Wine Corporation, 328 F.2d 925, 51 CCPA 1260 (1964)] may *perform* a function, holding wine, which could equally well be served by containers of many other shapes, and in such circumstances the *incidental* function should not by itself preclude trademark registrability if the other conditions precedent are present.

*See also Time Mechanisms, Inc. v. Qonaar Corp.,* 422 F.Supp. 905, 913–914 (D.N.J. 1976).

We realize that Judge Gerry has reached a contrary conclusion in *Fotomat Corporation v. Photo Drive-Thru, Inc.,* 425 F.Supp. 693 (D.N.J.1977). Judge Gerry concluded

**1236**

that the Fotomat building was functional and stated that he had received no evidence that (1) linked confusion to any "similarity in the aspects of the building designs which are distinctive for federal trademark purposes" or (2) confusion was design-related, rather than "caused by generalized similarities in the settings and products." We note (1) Judge Gerry was ruling only on a motion for a preliminary injunction; (2) plaintiff represents, and it appears from ·the opinion, that Judge Gerry received no specific evidence as to functionality; (3) we received evidence which did clearly link customer confusion to the *shape of the roofs*; and (4) we received evidence clearly indicating that the shape of the Fotomat roof is only incidentally functional, and is primarily distinctive and arbitrary. Had Judge Gerry been given the benefit of the evidence which we were presented, he might well have reached a contrary conclusion. In support of our conclusion, see *Fotomat Corporation v. Houck,* 166 U.S.P.Q. 271 (1970).

Thus, it is our conclusion that while the Fotomat building configuration does serve incidentally functional purposes, it is in essence arbitrary and distinctive and may constitute a valid service mark. We will discuss the issue of functionality no further in this opinion; we presume the validity of plaintiff's service mark.

Trial to the Court was held January 24 to 27, 1977. At the close of the evidence, the Court allowed both sides to file final briefs. These have recently been received. We state for the record that this case was well prepared and well tried. Counsel for both sides are to be commended.

Upon reflection, we have concluded that two evidentiary rulings made during the trial should be reversed. First, we have concluded that the testimony of Melville Owen should be disregarded as invading the province of the Court. Second, we have concluded that all passages from the book used by plaintiff to cross-examine defendant's witness Balderson should be disregarded for lack of a proper foundation. We have completely disregarded both of these sources of evidence.

## FINDINGS OF FACT

### The Plaintiff

1. Plaintiff Fotomat Corporation is a Delaware corporation with its principal offices in La Jolla, California, and Stamford, Connecticut. Fotomat has engaged in the retail drive-in photographic service and supply store business since 1967, when it purchased the rights to its service mark from its predecessor corporation which had begun operations in 1966.

2. Since opening its business, Fotomat has used continuously a building design which includes a small building with a rectangular base. The building is a freestanding kiosk which is normally situated in the parking lot of a shopping center. The base of the building is aluminum with doors and windows suitable for drive-up service. The most distinguishing feature of the design is the large, steeply-pitched roof which overhangs the base of the building. The roof can be variously described as an A-frame, a hip roof, or a gable roof. The Fotomat building is blue with a yellow, three-tiered roof. Fotomat constructs its own buildings and erects them with concrete planters at each end. Fotomat departs from its standard blue and yellow building only when local building regulations or shopping center leases require changes. The most frequent change required is that Fotomat place a brown thatched roof over its normal yellow, three-tiered roof. In practice, the "standard" Fotomat buildings are not identical, but are extremely similar. [See Appendix # 1. The standard Fotomat building is pictured in the left hand column; defendant's allegedly infringing stores are represented in the other two columns]

3. A slight change in the design of the Fotomat store occurred around 1972 when the word "FOTOMAT" was moved from the ends to the sides of the kiosks, and the size of the letters was increased from about 7 inches to about 11 inches.

4. On April 13, 1971, plaintiff's service mark, consisting of a black and white sketch of its building design, was registered on the Principal Register of the United

States Patent and Trademark Office. [See Appendix # 2]

5. On September 5, 1972, plaintiff's building design with color and the word "Fotomat" was registered on the Principal Register of the United States Patent and Trademark Office. [See Appendix # 3]

6. On October 22, 1968, Fotomat registered, with the State of Kansas Service Mark Registration, its building design without color and its building design with color and the word "Fotomat".

7. By October 31, 1976, there were over 2600 Fotomat stores embodying the Fotomat building design in operation in 37 of the United States and Canada. In the last five years, Fotomat has done approximately $450 million worth of retail business.

8. On October 25, 1968, Fotomat expanded into Kansas by opening and operating a store embodying the service mark building design in Kansas City, Kansas.

9. Phil Chamberlain is the area manager for Fotomat, headquartered in Kansas City, Missouri. His area of responsibility includes metropolitan Kansas City and the surrounding areas, including Topeka. There are 53 stores in Chamberlain's area. All 53 utilize the standard shape of the Fotomat building design. Six of the buildings have a changed roof composition or color because of housing and building regulations or because of lease restrictions. The remaining 47 buildings are the standard blue-and-yellow color and standard design.

10. In September, 1974, Fotomat opened four stores in Topeka, Kansas. In May, 1976, Fotomat opened two more stores in Topeka. All six of these stores utilize the standard blue-and-yellow Fotomat building.

11. Plaintiff has established a reputation in Lawrence, Kansas, even though it has no shops presently open there. Fotomat is reasonably likely to expand its business into Lawrence in the future. Fotomat has investigated sites and attempted to arrange leases in Lawrence, Kansas. Mr. Chamberlain has examined several places in Lawrence as possible sites for future Fotomat stores. However, plaintiff has not attempted to negotiate any leases since the summer of 1976.

12. In the past six years, Fotomat has spent approximately $18 million for advertising. All television advertising includes the prominent display of the standard blue-and-yellow Fotomat building. All printed advertising in magazines and newspapers features the Fotomat building design. Until a few years ago, all Fotomat radio advertising described the Fotomat building design, referring the potential customer to the "little blue building with the big yellow roof." Fotomat also displays its building design on processing bags, film boxes, flash cube boxes, merchandising bags, processing envelopes, delivery trucks, letterheads, business cards, checks, invoices, purchase orders, coupons, fliers, and the like. [See Appendix # 4 for example of Fotomat film envelope.]

13. Significant amounts of Fotomat's advertising have been done through Kansas City media that reach Lawrence and Topeka. In the last four years, Fotomat has spent approximately $100,000 on television advertising in the Kansas City television stations. Lawrence is within the ADI [area of dominant influence] of the Kansas City television stations. These stations all reach Topeka, but it is a secondary market. Significant amounts have also been spent on advertising with Kansas City radio stations which reach Lawrence and Topeka. On December 26, 29, and 30, 1974, Fotomat advertised in the morning and evening Kansas City Times and Star. It is estimated that this newspaper puts 2000 papers daily into Topeka, and 7500 into Lawrence.

14. In 1971 and 1972, Fotomat advertised in five issues of Life magazine, which placed 80,000 issues into Kansas each week.

15. Fotomat has advertised on Topeka radio and television in the last two years.

16. The building design which plaintiff has service-marked is a valuable assert to the Fotomat company. The kiosks themselves serve as large, highly-visible billboards.

17. The Fotomat building is a symbol of the company. Because of its unusual and original design, it serves as an attention-getting and recall device for customers.

18. Plaintiff's service mark is distinctive and fanciful. The evidence indicates, and defendant admits, that the Fotomat design is a well-known, attractive, and famous service mark.

### The Defendant

19. Defendant Steve Cochran resides in Lawrence, Kansas. Excluding one early walk-in store which was open only a short time, Cochran has, at one time or another, operated four retail drive-in photo processing stores under the name "Quick Stop Photo". His first store was located in the North Plaza Shopping Center, 2008 North Central, in Topeka. (the "North Topeka" store) It was opened on November 27, 1972. Cochran's second store was located in the Eastboro Shopping Center in Topeka, at 3158 East 6th Street. It opened in June of 1974, but is now closed. Cochran's third Topeka store is located in the Brookwood Shopping Center, at 2910 Oakley. It opened in October, 1974. Defendant's fourth store is located in the Mall Shopping Center, 711 West 23rd Street, in Lawrence, Kansas. It was opened in December, 1974.

20. The Brookwood and Eastboro stores are not alleged to be infringing stores. Plaintiff does allege that the North Topeka and Lawrence stores are designed so similarly to the standard Fotomat design as to infringe Fotomat's service mark. These two buildings are of the same general configuration as the Fotomat building. Most importantly, these two. buildings have a large roof shaped similar to the Fotomat roof. The defendant's roofs are painted orange. Defendant built these two buildings himself with the help of his cousin. [See Appendix # 1]

21. Defendant began his business after Fotomat had received its Federal and Kansas registration and after Fotomat had begun business in the State of Kansas. Defendant entered the Topeka market before plaintiff. As explained above, plaintiff has not yet entered the Lawrence market although it does have expansion plans which would include entering the Lawrence area.

22. Defendant is the owner of two service marks registered in the Office of the Kansas Secretary of State. One is "Quick Stop" and the other is "Steve's Quick-Stop One Day Photofinishing". Defendant has not registered his building design.

23. Defendant Cochran has advertised on a modest scale in the Topeka and Lawrence areas. Defendant's radio advertisements stress that Quick Stop Photo is "the little building with the orange roof."

24. Defendant's clerks answer the telephone by stating "Quick Stop Photo". The name "Quick Stop Photo" is on a large sign on the two allegedly infringing stores, although it cannot always be seen by a customer coming in from the side.

25. Cochran prominently displays a drawing of his North Topeka store on his fliers, processing envelopes, and other written advertisements. He associates the color orange with his building as much as possible. [See Appendix # 5 for an example of defendant's film envelope.]

### Similarity

26. Plaintiff and defendant provide the public with substantially similar services. Both provide drive-through service by a shop that offers quick film processing at discount rates. Both offer for sale film and other photographic accessories.

27. Both plaintiff and defendant cater primarily to amateur photographers.

28. Defendant's buildings in North Topeka and Lawrence have numerous similarities to plaintiff's building design. Both are small, free-standing buildings situated in parking lots. Both are rectangular buildings with planters at each end, suitable for drive-up services, as are plaintiff's buildings. Both defendant's buildings have a steeply pitched roof that is large in proportion to the base, and which overhangs the base. Silhouettes of the defendant's buildings would be extremely similar to those of plaintiff's buildings, primarily because the roofs are similar in height, shape, angle, and overhang. Arrangement of windows, doors, and advertising placards are also similar.

29. If viewed side-by-side, defendant's buildings would be distinguishable from plaintiff's buildings. The exact dimensions

of the base of the building and the exact angle of the roof are not identical. Defendant's North Topeka store is topped by a sign which reads "Kodak-Film, Quick Stop Photo Shop", and has a skirt around the overhang of the roof which reads: "Quick Stop Photo One Day Photo Finishing". Defendant's Lawrence store has a skirt around the overhang which reads: "Quick Stop Photo One Day Photofinishing". Defendant's two buildings have artificial red brick bases, while plaintiff's buildings have blue aluminum bases.

30. Despite many minor distinctions in building design and construction, the overall visual appearance of these two buildings is exceedingly similar to plaintiff's service mark.

31. Neither of defendant's allegedly infringing shops is located where it can be compared on a side-by-side basis with a Fotomat store.

32. Plaintiff and defendant employ the same advertising format; they feature pictures or logos of their respective buildings on all printed advertisements and on film and processing sacks. At first glance, the designs of the buildings used on plaintiff's and defendant's ads, processing envelopes and other materials are very similar. Plaintiff's motto "the little blue building with the big yellow roof" is similar to defendant's motto "the little building with the orange roof."

*Likelihood of Confusion*

33. Defendant knew of plaintiff's building design and had done business with plaintiff before he began his "Quick Stop Photo" business.

34. A myriad of alternative designs were available to defendant, yet he built his buildings in a design very similar to Fotomat's.

35. Defendant, perhaps without consciously intending to unfairly steal Fotomat's business, intended to utilize a building design similar to Fotomat's.

36. On June 26, 1975, Fotomat, by letter from house counsel, notified defendant Cochran of its objection to his use of what it considered its building design. In another

letter on July 18, 1975, Fotomat urged Cochran to respond to its earlier letter because it considered the matter to be of utmost importance. Cochran continues to utilize the building design in his North Topeka and Lawrence stores.

37. Defendant's own witness (McRorey) testified, and we so find, that there exists a group of consumers who, when seeking drive-up photographic services, specifically desire to do business with plaintiff Fotomat.

38. The services offered by plaintiff and defendant are not especially expensive. Therefore, customers will not pay as much attention in seeking such services as they would if the services involved a larger monetary expenditure.

39. There exists among customers of this type of service a significant amount of confusion concerning the source of drive-up photo processing services. The evidence shows that no matter how different in design two buildings might be, some customers will manage to confuse them. As an example, a clerk for a competing company, Meller's, testified that customers frequently confused Meller's with Fotomat. The Meller's buildings are square buildings with flat roofs. They are painted white and look nothing like Fotomat buildings. Defendant's evidence suggests, and we so find, that some people do not distinguish between companies and store designs offering this type of drive-through photographic service. Some customers tend to associate all such small buildings located in shopping center parking lots, never stopping to think (or care) which company might own the particular shop.

40. Shape, size, location, arrangement of elements, color, texture, and wording are all factors that contribute to the perception by a consumer. For some consumers it is obvious that mere similarity of size and location of buildings are sufficient to cause confusion, and differences in other factors will not prevent the confusion. Therefore, some customers will associate all small buildings in shopping center parking lots, and will not stop to analyze whether they might be owned by the same or different

companies. For other, more observant consumers, it is clear that mere differences in color between stores will be sufficient to distinguish them. However, it appears that a large group of people fall between these less observant and more observant groups. This large "middle-range" group has perceptions which respond to shape and perhaps size, over color, wording, texture, and location. We find that given two small buildings in a parking lot offering photographic services, most people will be able to distinguish them if they have different shapes. However, if the size, location, and shape of the buildings are the same, changes in color, texture, and wording of signs will not distinguish the buildings for an appreciable number of ordinary consumers using ordinary caution.

41. Plaintiff produced at trial many customers who fall within this "middle range" of consumers. They testified as to instances of actual confusion between plaintiff's buildings and defendant's buildings. They testified, and we believe, that the actual confusion was caused primarily by the similarity in shape, particularly the roofs, of plaintiff's and defendant's buildings. It was clear from the testimony of these witnesses that the most distinctive feature of both defendant's and plaintiff's buildings is the large, steeply pitched roof. Witness after witness referred to the roof of defendant's buildings as the source for their confusion, describing its size and shape both verbally and with hand gestures.

42. This evidence of actual confusion, taken in connection with the other evidence presented, convinces us of the "likelihood of confusion" caused by the similarity in building design. Therefore, we believe that over and above the "irrelevant confusion" which defendant demonstrated will exist no matter what the buildings look like, we believe there exists a significant group of people who face a likelihood of confusion caused specifically by the similarity of roof shape and size in plaintiff's and defendant's buildings. The specific examples of actual confusion which plaintiff produced "dovetailed" with the plaintiff's expert's testimony as to how the average consumer's perception would operate.

43. This likelihood of confusion is enhanced by the fact that most people who are driving in a parking lot will have much of their perceptive capacity devoted to the act of driving the car. Therefore, they will not be able to pay close attention to the qualities of the building which they approach. Many of these people will perceive the factors of location, shape, and size of the building, and examine the building no further. They will be satisfied that they have found what they are looking for and will not examine the further building details of color, texture, arrangement of elements, or printed signs.

44. While color may be a very significant factor in the identification of some objects (e. g., a fire engine), it is not so significant in architecture. Color and texture of a building surface are arbitrarily selected; therefore, a particular color is not associated with a particular building unless that perception is built up artificially. For this reason, the fact that defendant's buildings are a different color than plaintiff's buildings does not serve to eliminate actual confusion caused by the similarity of shape.

45. Details are lost in memory. Therefore, a time lapse will make identification more difficult. When one has seen a Fotomat store, over time his memory will lose details such as color and texture. However, the memory will probably retain the shape of the building. The unique feature of the peaked roof might even be exaggerated by memory. The similarity in roof design that defendant's buildings have to the Fotomat building is a factor that will probably outweigh all other items of perception such as color, texture, arrangement of elements, and printed signs.

46. Having seen a Fotomat building before, the average consumer, when looking for one again, will probably spot a freestanding building in a shopping center parking lot and will gain a perception of the overall shape of the building, particular-

ly the shape of the roof and the proportion of roof to base. At that point, the consumer will probably be satisfied, and will not further examine the details of the building.

47. Defendant's efforts to distinguish his stores by the use of signs and other means have not been successful. Defendant's North Topeka and Lawrence stores remain confusingly similar to plaintiff's shops because of the similarity in roof design.

48. In addition to the confusing similarity between plaintiff's and defendant's buildings, there is confusion caused by the similarity in the two-dimensional representations of the buildings used by the parties on their advertising, fliers, processing envelopes, and other printed material.

### General

49. The plaintiff uses its service mark extensively in interstate commerce. Such use would be significantly affected by localized, intra-state infringement. Plaintiff's reputation has been harmed by defendant's infringing conduct in the Lawrence, Kansas, market.

50. Plaintiff, wherever it can, continues to use the blue-and-yellow version of its service mark. Plaintiff, in addition, has taken necessary steps to combat what it considers infringement of its service mark in other areas of the country. There is no hint in the evidence that plaintiff has any intention to abandon its service mark.

51. All conclusions of law included herein which are labeled as findings of fact shall be deemed to be conclusions of law.

### CONCLUSIONS OF LAW

#### Infringement

1. This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. § 1332, and 28 U.S.C. § 1338.

2. A trademark is a distinctive mark of authenticity through which the merchandise or services of a particular producer or manufacturer may be distinguished from those of others. *Reynolds & Reynolds Co. v. Norick,* 114 F.2d 278 (10th Cir. 1940); *Ph. Schneider Brewing Co. v. Century Distilling Co.,* 107 F.2d 699 (10th Cir. 1939); *Schwinn Bicycle Co. v. Murray Ohio Manufacturing Co.,* 339 F.Supp. 973, 979 (M.D.Tenn.1971), *aff'd* 470 F.2d 975 (6th Cir. 1972).

3. The purpose of a trademark is to designate, identify and point out distinctively the origin of the products or services with which it is associated. *Drexel Enterprises, Inc. v. Richardson,* 312 F.2d 525, 527 (10th Cir. 1962). When the origin of a product or service is clearly identified, both the consumer and the owner of the trademark, who has expended money and effort to develop the trademark, are protected. *See also Scarves by Vera, Inc. v. Todo Imports Ltd.,* 544 F.2d 1167, 1172 (2d Cir. 1976).

4. The same rules that apply to a trademark apply to a service mark, which is merely a trademark that has been applied to services rather than products. 15 U.S.C. § 1127.

5. In a proper case, a uniquely designed building can constitute a valid service mark. *See Fotomat Corporation v. Photo Drive-Thru, supra; McDonald's Corp. v. Moore,* 243 F.Supp. 255 (S.D.Ala.1965), *aff'd* 363 F.2d 435 (5th Cir. 1966); 2 Callmann, Unfair Competition, Trademarks and Monopolies § 61.3 (3d ed. 1967).

6. The plaintiff's certificates of federal registration provide prima facie evidence of the validity of plaintiff's two registered trademarks. *Venetianaire Corp. of America v. A & P Import Co.,* 429 F.2d 1079 (2d Cir. 1970); *Drexel Enterprises, Inc. v. Richardson, supra* at 527; *Aluminum Fab. Co. of Pittsburgh v. Season-All W. Corp.,* 259 F.2d 314, 316–17 (2d Cir. 1968); *Coit Drapery Cleaners v. Coit Drapery Cleaners*

*of N. Y.,* 423 F.Supp. 975, 978 (E.D.N.Y. 1976); *Masterpiece of Pa., Inc. v. Consolidated Novelty Co.,* 368 F.Supp. 550, 552 (S.D.N.Y.1973).

7. A corporation holding a validly registered service mark is entitled to have its mark protected. Fotomat is entitled to avoid having its reputation placed in the control of another, even though its reputation is not presently being harmed. *James Burrough, Ltd. v. Sign of Beefeater, Inc.,* 540 F.2d 266, 276 (7th Cir. 1976); *Swee-Tarts v. Sunline, Inc.,* 380 F.2d 923, 927 (8th Cir. 1967); *Carling Brewing Company v. Philip Morris, Inc.,* 277 F.Supp. 326, 335 (N.D.Ga.1967).

8. Plaintiff's mark is a famous and strong mark, and therefore entitled to broad protection. *J. B. Williams Co., Inc. v. Le Conte Cosmetics, Inc.,* 523 F.2d 187, 192 (9th Cir. 1975), *cert. den.* 424 U.S. 913, 96 S.Ct. 1110, 47 L.Ed.2d 317 (1976); *E. I. DuPont de Nemours & Co. v. Yoshida International, Inc.,* 393 F.Supp. 502, 510 (E.D.N.Y.1975).

9. The burden of proving infringement of plaintiff's service mark is upon plaintiff. *David Sherman Corp. v. Heublein, Inc.,* 340 F.2d 377, 380 (8th Cir. 1965); *Checker Food Prod. Co. v. Ralston Purina Co.,* 232 F.2d 477, 481 (8th Cir. 1956); *Pepsi-Co., Inc. v. Grapette Company,* 288 F.Supp. 923, 931 (W.D.Ark.1968), *rev'd on other grounds,* 416 F.2d 285 (8th Cir. 1969).

10. Fotomat's service mark has been infringed if there is a "likelihood of confusion" caused by the similarity of defendant's two buildings to plaintiff's building design. 15 U.S.C. § 1114(1)(a); K.S.A. § 81–121(a); *Miss Universe, Inc. v. Patricelli,* 408 F.2d 506, 509 (2d Cir. 1969); *Swee-Tarts v. Sunline, Inc., supra* at 928; *Drexel Enterprises, Inc. v. Richardson, supra* at 528; *Mershon Company v. Pachmayr,* 220 F.2d 879, 883 (9th Cir. 1955) *cert. den.* 350 U.S. 885, 76 S.Ct. 139, 100 L.Ed. 780; *Sid Berk, Inc. v. Uniroyal, Inc.,* 425 F.Supp. 22, 29 (C.D.Cal.1977); *Amana Society v. Gem-*

*einde Brau, Inc.,* 417 F.Supp. 310, 311 (N.D. Iowa 1976); *Eaton Allen Corp. v. Paco Impressions Corp.,* 405 F.Supp. 530, 532 (S.D.N.Y.1975). This likelihood of confusion should extend to an appreciable number of people. *[Maternally Yours v. Your Maternity Shop,* 234 F.2d 538, 542 (2d Cir. 1956)], who are actual or potential customers. *David Sherman Corp. v. Heublein, Inc., supra* at 379.

11. The test of likelihood of confusion is essentially four-pronged:

(1) the degree of similarity between the protected service mark and the allegedly infringing building design (see Findings of Fact # 28–32);

(2) the intent of the defendant in adopting the allegedly infringing building design (see Findings of Fact # 33–36);

(3) the relation in use and manner of marketing between the goods or services marketed by the defendant and those marketed by the plaintiff (see Findings of Fact # 10, 11, 19, 26 and 27);

(4) the degree of care likely to be exercised by purchasers (see Findings of Fact # 38 and 43).

Restatement of Torts § 729 (1938); *Drexel Enterprises, Inc. v. Richardson, supra* at 528; *Chips 'N Twigs, Inc. v. Chip-Chip, Ltd.,* 414 F.Supp. 1003, 1013 (E.D.Pa.1976).

12. For plaintiff to prevail on an infringement claim, it is not necessary that plaintiff prove fraudulent intent on the part of the defendant. *Tisch Hotels, Inc. v. Americana Inn, Inc.,* 350 F.2d 609, 613 (7th Cir. 1965); *Chips 'N Twigs, Inc. v. Chip-Chip, Ltd., supra* at 1015.

13. When defendant entered the drive-through photographic services business, knowing of plaintiff's service mark, he was under a duty to take reasonable precautions to avoid adopting a confusingly similar building design. *Tisch Hotels,*

*Inc. v. Americana Inn, Inc., supra* at 613; *Harold F. Ritchie, Inc. v. Chesebrough-Pond's, Inc.,* 281 F.2d 755, 758 (2d Cir. 1960); *McNeil Laboratories v. American Home Products Corp.,* 416 F.Supp. 804, 808 (D.N.J. 1976); *Londontown Manufacturing Co. v. Cable Raincoat Co.,* 371 F.Supp. 1114, 1119 (S.D.N.Y.1974). One who adopts a design similar to the service mark of another who is already well established in the field does so at his own peril. *United Merchants & Manufacturers v. R. A. Products,* 404 F.2d 399 (Cust. & Pat.App. 1968); *Masterpiece of Pa., Inc. v. Consolidated Novelty Co., supra* at 552.

14. When defendant entered the drive-through photographic services business and knowingly selected a building design very similar to plaintiff's registered building design, an inference was raised that defendant intended to copy plaintiff's service mark. *Fleischmann Distilling Corp. v. Maier Brewing Company,* 314 F.2d 149, 157 (9th Cir. 1963); *Time, Inc. v. Ultem Publications,* 96 F.2d 164, 165 (2d Cir. 1938); *E. I. DuPont de Nemours & Co., v. Yoshida International, Inc.,* 393 F.Supp. 502, 514 (E.D.N.Y.1975).

15. When, as here, a defendant intentionally copies the service mark of another, it is presumed that he did so in order to cause confusion between his products and those of the one holding the service mark. The Courts accept the business judgment of the defendant in those matters and from such intent presume a likelihood of confusion. *National Ass'n of Blue Shield Pl. v. United Bankers L. Ins. Co.,* 362 F.2d 374, 377 (5th Cir. 1966); *National Lead Company v. Wolfe,* 223 F.2d 195, 202 (9th Cir. 1955), *cert. den.* 350 U.S. 883, 76 S.Ct. 135, 100 L.Ed. 778; *National Lampoon, Inc. v. American Broadcasting Cos., Inc.,* 376 F.Supp. 733, 747 (S.D.N.Y.1974), *aff'd* 497 F.2d 1343 (2d Cir.); *Ortho Pharmaceutical Corp. v. American Cyanamid Co.,* 361 F.Supp. 1032, 1042 (D.N.J.1973); *Wells Fargo & Co. v. Wells Fargo Express Co.,* 358 F.Supp. 1065, 1091 (D.Nev.1973).

16. Continued use by defendant of the infringing design after notice of Fotomat's charges of infringement constitutes evidence of intent to copy. Restatement of Torts § 716 (1938); *Fleischmann Distilling Corp. v. Maier Brewing Company, supra* at 157; *Kelly Girl Service, Inc. v. Roberts,* 243 F.Supp. 225, 228 (E.D.La.1965); *R. B. Davis Co. v. Davis,* 11 F.Supp. 269, 274 (E.D.N.Y. 1935).

17. When evaluating similarity for purposes of discovering likelihood of confusion, the key is the "overall impression" given by the service mark and the allegedly infringing design. *Grandpa Pidgeon's of Missouri, Inc. v. Borgsmiller,* 477 F.2d 586, 587 (Cust. & Pat.App. 1972) ("overall commercial impression"); *National Ass'n of Blue Shield Pl. v. United Bankers L. Ins. Co., supra* at 378 ("mental impact"); *Finn v. Cooper's, Inc.,* 292 F.2d 555, 558, 49 CCPA 1132 (1961) ("visual impact").

18. To be guilty of infringing, defendant need not copy plaintiff's entire building design if the portion that he copies contains enough similarity to the distinctive portions of Fotomat's mark to be likely to cause confusion. *United Merchants & Manufacturers, Inc. v. R. A. Products, Inc., supra* at 400; *David Sherman Corp. v. Heublein, Inc., supra* at 380; *Mershon Company v. Pachmayr, supra* at 884; *Grotrian, Helfferich Schulz, etc. v. Steinway & Sons,* 365 F.Supp. 707, 715 (S.D.N.Y.1973), *modified* 523 F.2d 1331 (2d Cir. 1975). The most distinctive feature of plaintiff's design, the roof, was copied by defendant.

19. Merely changing the color of a confusingly similar design will not necessarily distinguish similar marks. *National Ass'n of Blue Shield Pl. v. United Bankers L. Ins. Co., supra* at 378; *Kampgrounds of America v. N. Del. A–OK Campground,* 415 F.Supp. 1288, 1296 (D.Del.1976). 3 Callmann, Unfair Competition: Trademarks and Monopolies § 82.1(j)(3d ed. 1969).

20. Since plaintiff and defendant offer virtually identical services, the simi-

**1244**

larity of building design need not be as great to prove confusion as would be required were the services offered completely different. *David Sherman Corp. v. Heublein, Inc., supra* at 382; *Louis Rich, Inc. v. Horace Longacre, Inc.,* 423 F.Supp. 1327, 1339 (E.D.Pa.1976); *Eaton Allen Corp. v. Paco Impressions Corp., supra* at 533; *Exquisite Form Indus., Inc. v. Exquisite Fabrics of London,* 378 F.Supp. 403, 412 (S.D.N.Y.1974); *A. Smith Bowman Distillery, Inc. v. Schenley Distillers, Inc.,* 198 F.Supp. 822, 826 (D.Del.1961).

21. When a purchaser can view two objects side-by-side, it is easier to distinguish them than if they are viewed on a basis separated by time and space. Therefore, a side-by-side comparison of plaintiff's and defendant's buildings would not give an accurate view of what the ordinary consumer using ordinary care would likely perceive. *James Burrough, Ltd. v. Sign of Beefeater, Inc., supra* at 275; *Union Carbide Corp. v. Ever-Ready, Inc.,* 531 F.2d 366, 382 (7th Cir. 1976); *Grandpa Pidgeon's of Missouri, Inc. v. Borgsmiller, supra* at 587; *Finn v. Cooper's, Inc., supra* at 559–560.

22. The law protects the gullible and ignorant consumer as much as the careful and intelligent consumer. *Tisch Hotels, Inc. v. Americana Inn, Inc., supra* at 614; *Kampgrounds of America v. N. Del. A–OK Campground, supra* at 1294.

23. The test of "likelihood of confusion" is not gauged by the careful and scrupulous shopper, but by the ordinary consumer using ordinary care under ordinary buying conditions. *McLean v. Fleming,* 96 U.S. 245, 251, 24 L.Ed. 828 (1878); *David Sherman Corp. v. Heublein, Inc., supra* at 379–80.

24. If a product or service is, as here, relatively inexpensive, the customer will normally pay less attention to what he is purchasing than if the goods or services were expensive. Therefore, less similarity between building designs is required to show likelihood of confusion than would be required if the plaintiff and defendant competed in a market of expensive goods. *Grotrian, Helfferich, Schulz, etc. v. Steinway & Sons,* 523 F.2d 1331, 1342 (2d Cir. 1975); *Beer Nuts, Inc. v. King Nut Company,* 477 F.2d 326, 329 (6th Cir. 1973).

25. It is very difficult for a plaintiff such as Fotomat to prove *actual* confusion in a trademark case. Therefore, plaintiff need not show actual confusion to prevail; likelihood of confusion is, of course, sufficient. *Scarves by Vera, Inc. v. Todo Imports, Ltd., supra* at 1175; *Beef/Eater Restaurants, Inc. v. James Burrough Ltd.,* 398 F.2d 637, 639 (5th Cir. 1968); *Maternally Yours v. Your Maternity Shop, supra* at 542; *G. D. Searle & Co. v. Chas. Pfizer & Co.,* 265 F.2d 385, 387 (7th Cir. 1959), *cert. den.* 361 U.S. 819, 80 S.Ct. 64, 4 L.Ed.2d 65; *McNeil Laboratories v. American Home Products Corp., supra* at 806.

26. Proof of actual confusion which was presented in this case, constitutes substantial evidence of likelihood of confusion. *Tisch Hotels, Inc. v. Americana Inn, Inc., supra* at 612; *Harold F. Ritchie, Inc. v. Chesebrough-Pond's, Inc., supra* at 762; *Chips 'N Twigs, Inc. v. Chip-Chip, Ltd., supra* at 1013.

27. Where likelihood of confusion is a close issue, it should be resolved against the newcomer to the business. *E. I. DuPont de Nemours & Co. v. Yoshida International, Inc., supra* at 510.

28. When our findings of fact are viewed in light of the legal framework just presented, it is clear that defendant's buildings, and two-dimensional representations thereof, are "confusingly similar" to plaintiff's service mark.

*Defenses*

29. Even though defendant's business is primarily "intrastate", because the infringing buildings affect plaintiff's inter-

state use of the trademark, the "in commerce" requirement of 15 U.S.C. § 1127 is met in this action. *World Carpets, Inc. v. Dick Littrell's New World Carpets,* 438 F.2d 482, 488 (5th Cir. 1971); *Franchised Stores of New York, Inc. v. Winter,* 394 F.2d 664, 669 (2d Cir. 1968); *Trail Chevrolet, Inc. v. General Motors Corporation,* 381 F.2d 353, 354 (5th Cir. 1967); *Kampgrounds of America, v. N. Del. A–OK Campgrounds, supra* at 1291; *Minute Man of America, Inc. v. Coastal Restaurants, Inc.,* 391 F.Supp. 197, 199 (N.D.Tex.1975); *Wells Fargo & Co. v. Wells Fargo Express Co., supra* at 1079–81.

30. The burden of proof relating to defendant's abandonment claim is upon defendant. *Drexel Enterprises, Inc. v. Richardson, supra* at 527; *Friedman v. Sealy, Inc.,* 274 F.2d 255 (10th Cir. 1960); *National Lead Company v. Wolfe, supra* at 205. Defendant has not met that burden of proof.

31. A requirement of abandonment is a showing of intent by Fotomat to abandon its service mark. *Carl Zeiss Stiftung v. Veb Carl Zeiss Jena,* 433 F.2d 686, 704 (2d Cir. 1970), cert. den. 403 U.S. 905, 91 S.Ct. 2205, 29 L.Ed.2d 680 (1971); *Tillamook County Cream. Ass'n v. Tillamook Cheese & Dairy Ass'n,* 345 F.2d 158, 162 (9th Cir. 1965), cert. den. 382 U.S. 903, 86 S.Ct. 239, 15 L.Ed.2d 157; *Drexel Enterprises, Inc. v. Richardson, supra* at 527. Defendant has not shown this intent.

32. Minor modifications of a trademark do not constitute abandonment. A change in a mark that does not affect the distinctive characteristics of the mark represents a continuity of the prior mark. *Drexel Enterprises, Inc. v. Richardson, supra* at 527; 74 Am.Jur.2d *Trademarks and Tradenames,* § 36, p. 726 (1974) 3 A.L.R.2d 1226, § 24 (1949). Defendant has shown no intentional modification by Fotomat of a distinctive portion of its service mark.

33. Our findings of fact indicate that plaintiff was the prior user, both nationally and in Kansas, and that plaintiff was the prior registrant, both nationally and in Kansas. We further have found that the Lawrence, Kansas, market is within plaintiff's zone of reputation, zone of advertising, and zone of natural expansion. Therefore, defendant's "equitable trade area" defense is wholly invalid, and plaintiff is entitled to injunctive relief as to the Lawrence market, as well as the Topeka market. *Burger King of Florida v. Hoots,* 403 F.2d 904, 908 (7th Cir. 1968); *Mister Donut of America, Inc. v. Mr. Donut, Inc.,* 418 F.2d 838, 844 (9th Cir. 1969); *Tisch Hotels, Inc. v. Americana Inn, Inc., supra* at 613; *Dawn Donut Company v. Hart's Food Stores, Inc.,* 267 F.2d 358, 362 (2d Cir. 1959); *Weiner King, Inc. v. Wiener King Corp.,* 407 F.Supp. 1274, 1281 (D.N.J.1976); *Minute Man of America, Inc. v. Coastal Restaurants, Inc., supra* at 198; *HMH Publishing Co. v. Turbyfill,* 330 F.Supp. 830, 832 (M.D. Fla.1971); 3 Callmann, *supra* at § 76.3; Comment, *The Scope of Territorial Protection of Trademarks,* 65 Nw.U.L.Rev. 781 (1970). Defendant entered the Lawrence market with both actual and constructive notice of plaintiff's mark, and actual confusion and damage to plaintiff's reputation occurred in Lawrence. *Compare Value House v. Phillips Mercantile Company,* 523 F.2d 424 (10th Cir. 1975).

## Conclusion

34. By using a confusingly similar building design in both a three-dimensional (the building itself) and a two-dimensional (the logo on printed material such as advertising) form, defendant has

a) violated plaintiff's common law trademark rights as protected by the Lanham Act;

b) violated the plaintiff's rights under the Kansas law, K.S.A. § 81–111 *et seq.*; and

c) committed unfair competition. The law of unfair competition is more than adequately discussed in *Fotomat Corporation v. Photo Drive-Thru, supra,* although our findings of fact dictate an ultimate conclusion different than that reached by Judge Gerry.

**1246**

■ When plaintiff proved the elements required for a trademark infringement cause of action, it also proved the elements required for an unfair competition cause of action. *James Burrough, Ltd. v. Sign of Beefeater, Inc., supra* at 274, fn. 16; *G. LeBlanc Corporation v. H. & A. Selmer, Inc.,* 310 F.2d 449 (7th Cir. 1962); *Jewel Tea Co., Inc. v. Kraus,* 187 F.2d 278 (7th Cir. 1951), (*citing Armstrong Paint & Varnish Works Co. v. Nu-Enamel Corp.,* 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195 (1938).

35. All findings of fact which are herein labeled as conclusions of law shall be deemed to be findings of fact.

### DISCUSSION

■ Plaintiff placed before the Court a very well organized and thoroughly supported case. Most of the issues before the Court such as functionality, validity of plaintiff's mark, prior use, and similarity in design were easily resolved in plaintiff's favor.

However, one issue in this case was very close, and the Court has struggled long and hard with it. That issue is the extent of confusion caused by the *similarity of building design* that existed apart from general confusion between the different businesses offering such services.

Defendant's evidence made it clear that some customers do not care which company they do business with. They seek only to find a small building in a shopping center where there is located a business which will develop pictures. They care not which company operates the business. Plaintiff characterizes this type of confusion as "irrelevant" confusion, arguing that in any field certain customers will exhibit such confusion no matter how much of a distinction is made between building designs or other trademarks. For instance, plaintiff adduced proof that certain customers confuse McDonalds and Hardee's with Burger King, all being purveyors of hamburgers on a fast-food style basis.

We fully accept defendant's evidence that such general confusion does exist. The question we are faced with, however, is whether there is, in addition to this unavoidable confusion, confusion caused specifically by the similarity of building design. This was a difficult question, but it is our conclusion that such confusion does in fact exist for an appreciable number of ordinary consumers. Many of plaintiff's witnesses testified about confusion caused specifically and primarily by the similarity in *shape* between defendant's two buildings and plaintiff's building design. Plaintiff's expert in perception provided a convincing theoretical explanation for this customer conduct.

We know that some consumers just want their film developed and, absent a bad experience, do not care which company happens to operate the particular small store in the shopping center parking lot. However, it also appears that there is a class of consumers who, because of Fotomat's advertising, reputation, or past service, desire to trade with Fotomat specifically. We think the evidence shows that an appreciable number of people are in this class and that many of these people are actually confused by the similarity in defendant's building design. Given the level of actual confusion demonstrated in this case, we conclude that a likelihood of confusion exists for an appreciable number of ordinary consumers utilizing ordinary caution. Therefore, defendant's use of the infringing building designs must be enjoined.

### ORDER

IT IS THEREFORE ORDERED that defendant and his attorneys, agents, employees, and representatives and all others in privity with them, be enjoined and restrained from

(1) using in the North Topeka, Lawrence, or any other drive-through photographic service stores, any building or structure which is likely to be confused with the distinctive features of plaintiff's building design or design service mark; or

(2) using any building design or mark in two-dimensional form which is likely to be confused with the plaintiff's registered service marks.

Dated this 12th day of April, 1977, at Topeka, Kansas.

See Appendices on following pages.

APPENDIX #1

EXHIBIT 8A

EX 6

EX 5A

EX 1B

EX 6A

EX 5B

EX 1C

EX 6B

EX 5C

EX 1D

EX 6C

EX 5D

EX 1E

EX 6D

EX 5E

EX 1F

EX 6E

EX 5F

EX 1G

1248

# United States Patent Office

911,388
Registered Apr. 13, 1971

## PRINCIPAL REGISTER
### Service Mark

Ser. No. 308,423, filed Sept. 30, 1968

Fotomat Corporation (California corporation)
920 Kline St.
La Jolla, Calif.   92037

For: RETAIL DRIVE-IN PHOTOGRAPHIC SUPPLY STORE SERVICES, in CLASS 101 (INT. CL. 35).
First use Sept. 17, 1968; in commerce Sept. 20, 1968; Nov. 21, 1966 in a different form.

REGISTERED FOR A TERM OF 20 YEARS FROM   Apr. 13, 1971

Attest:

MAY 18 1976

Attesting Officer

Certified to be a true copy of the registration issued by the United States Patent & Trademark Office, which registration is in full force and effect.

C. Marshall Dann

Commissioner of Patents

APPENDIX #3

# United States Patent Office

942,454
Registered Sept. 5, 1972

## PRINCIPAL REGISTER
### Service Mark

Ser. No. 300,523, filed June 17, 1968

Fotomat Corporation (California corporation)
920 Kline St.
La Jolla, Calif. 92037

For: RETAIL DRIVE-IN PHOTOGRAPHIC SUP-
PLY STORE SERVICES, in CLASS 101 (INT. CL.
35).
First use as early as Nov. 21, 1966; in commerce Apr.
21, 1967.
The drawing is lined for the colors blue and yellow.
Owner of Reg. No. 861,726.

REGISTERED FOR A TERM OF 20 YEARS FROM Sept. 5, 1972

Attest:

SEP 1 1976

*S/ J. Berkeley*
Attesting Officer

Certified to be a true copy of the registration
issued by the United States Patent & Trademark
Office, which registration is in full force
and effect. Record title is in
Fotomat Corporation, a Del. corp.

*C. Marshall Dann*
Commissioner of Patents

# FOTOMAT ®

**Our business is good pictures**

# Have reprints and enlargements made of your favorite pictures.

## It's easy, it's inexpensive.

Because sharing your favorite photographs with family and friends is one of the real pleasures of picture-taking, Fotomat takes a special interest in providing quick and inexpensive service on reprints and enlargements. Just bring your negative or slide to the Fotomat store. We'll take care of it from there.

## APPENDIX #5

Phone 341-2778

8001

Responsibility for loss
or damage limited to
cost of film before exposure.

STORE
NO.   Malls

Use for only
one type of film

Responsibility for loss
or damage limited to
cost of film before exposure.

8001

STORE
NO.

NAME_____  DATE_____

ADDRESS_____  PHONE_____

| CHECK FILM | BLACK AND WHITE | KODACOLOR Film | XODACHROME Film | EKTACHROME Film | OTHER | COLOR PRINT FROM SLIDE |
|---|---|---|---|---|---|---|
| | | | | | | |

### DEVELOP AND PRINT ORDERS

FILM SIZE_____

NO. OF ROLLS_____

NO. OF PRINTS
FROM EACH NEG._____

### REPRINT ORDERS

NO. OF NEGATIVES
OR SLIDES_____

NO. OF PRINTS FROM
EACH SLIDE OR NEG._____

ENLARGEMENT SIZE_____

DUPLICATE COLOR SLIDES_____

| INSTRUCTIONS | PRINTS MADE | ▼ PRICE ▼ |
|---|---|---|
| | | DEV. |
| | | PRINT |
| | | TOTAL |
| | | TAX |
| | | TOTAL |

555656-X

## OVERLAND PHOTO COMPANY

## QUICK STOP PHOTO SHOP

711 West 23rd
Lawrence, Kansas 66044

Phone 841-2778