**HEALING THE CHILDREN, INC., Plaintiff,**

**v.**

**HEAL THE CHILDREN, INC., d/b/a Heal the Children PA, Inc. and Judith Staeger, Defendants.**

**Civ. A. No. 91–63E.**

United States District Court, W.D. Pennsylvania.

Feb. 27, 1992.

---

**1211**

Walter J. Steinkraus, Vidas & Arrett, P.A., Minneapolis, Minn., Dennis W. Krill, Dunlavey Nichols Ward & Krill, Erie, Pa., for plaintiff.

John R. Fernan, Fernan, Whitney & Masson, Ridgeway, Pa., for defendants.

## MEMORANDUM OPINION

COHILL, Chief Judge.

Presently before us are cross motions for summary judgment filed by plaintiff Healing the Children, Inc. and defendants Heal the Children, Inc. d/b/a/ Heal the Children Pa., Inc., and Judith Staeger. As the reader may have guessed from the caption of the case, this action is based on alleged infringement of federally registered service mark, false designation of origin and false description, infringement of common law trademark and service mark rights, dilution of service mark, unfair competition, and tortious interference with business. We have jurisdiction pursuant to 15 U.S.C. § 1121 and 18 U.S.C. §§ 1332 and 1338.

### Facts

The facts of this case are undisputed. Plaintiff is an international organization which serves children who are unable to obtain adequate medical treatment in their own countries. Plaintiff was incorporated as a non-profit corporation in the State of Washington in 1981 originally under the name "Heal the Children, Inc." As will be described in some detail herein, plaintiff's legal name subsequently became "Healing the Children, Inc." By 1986 there were more than 10 affiliated chapters of volunteers undertaking the corporation's activities in local regions around the United States. Defendant Heal the Children, Inc. was one such chapter.

In 1986, plaintiff reorganized its corporate structure. At the same time, with plaintiff's consent, many of the local chapters incorporated separately. Defendant Heal the Children, Inc. was one such chapter and incorporated under that name on November 24, 1986. Plaintiff's consent to the incorporation of its chapters was made subject to restrictions including the authority of plaintiff to "establish, accredit, and guide HTC chapters." "HTC" was the commonly used abbreviation of Heal the Children, Inc.

Apparently, disagreements arose between plaintiff and defendant Heal the Children, Inc. In one instance, plaintiff issued a directive to all chapters not to accept further referrals from a Guatemalan agency called Casa Guatemala. Defendant Heal the Children, Inc., however, refused to comply with this directive. Despite their differences, the plaintiff and defendant continued to work together on various projects until early 1989.

In late 1988 or early 1989, defendant Judith Staeger assumed control over the defendant Heal the Children, Inc. Ms. Staeger made it clear that she did not intend to work with plaintiff or to acknowledge that plaintiff had any authority over her actions. Complaint, ¶ 12. The name Heal the Children PA, Inc. was apparently adopted. Defendant Heal the Children PA, Inc. is not now a recognized chapter of plaintiff.

In December of 1986, when plaintiff was organized into distinct national and local chapter organizations, the national organization filed an application to register the service mark "Heal the Children" in the United States Patent and Trademark Office. The registration was opposed by Save the Children Federation, Inc., apparently due to the similarity of the names. Subsequently, the parties resolved this matter in a settlement agreement which became effective January 1, 1989. Defendant's Motion for Summary Judgment, attachment. Pursuant to the settlement, plaintiff agreed to withdraw the pending application for registration and agreed within 6 months to discontinue using the mark "Heal the Children." Save the Children Federation, Inc. agreed not to oppose the adoption by plaintiff of the service mark of "Healing the Children" and paid $1,000 to plaintiff.

In January of 1990, plaintiff filed an application to register the service mark of "Healing the Children" with the United States Patent and Trademark Office. The registration issued without opposition on October 16, 1990.

Plaintiff then brought this action alleging infringement of federally registered service mark, false designation of origin and false description, infringement of common law trademark and service mark rights, dilution of service mark, unfair competition, and tortious interference with business. Although plaintiff's complaint contains five counts, the summary judgment motion pertains only to Count II. Plaintiffs assert that "[w]hile the other Counts of the complaint are not being waived at this time, Plaintiff intends to dismiss its other claims without prejudice when the relief requested herein is provided by the Court."

*Discussion*

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving par-

ty is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

When confronted with a motion for summary judgment, it is not the court's function to weigh the evidence and determine the truth of the matter, but rather simply to determine whether there is a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

The moving party has the burden to identify those portions of pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The nonmoving party then must go beyond the pleadings and by affidavits, depositions, answers to interrogatories, and admissions on file, designate facts showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553.

Count II of the Complaint asserts a cause of action for false designation of origin and false description pursuant to § 43(a) of the Lanham Act which establishes in pertinent part:

Any person who, or in connection with any goods or services ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which ... is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

A claim for common law trademark infringement or unfair competition under

§ 43(a) is proven if (1) the trademark owner's mark is distinctive and thus protectable, and (2) the subsequent user's actions cause a likelihood of confusion among the relevant buyer class. *Trans Pacific Ins. Co. v. Trans–Pacific Ins. Co.*, 739 F.Supp. 240, 244 (E.D.Pa.1990).

### A. *Protection*

■ As to the first element, for purposes of determining the degree of protection to which a mark is entitled under the federal and common law, courts have classified trade names as either "generic," "descriptive," "suggestive," or "arbitrary." *A.J. Canfield Co. v. Honickman*, 808 F.2d 291, 296–97 (3d Cir.1986).

■ A generic name suggests the basic nature of the article or service and is generally incapable of achieving trade name protection. *American Television and Communications Corp. v. American Communications and Television, Inc.*, 810 F.2d 1546, 1548 (11th Cir.1987). A descriptive term identifies a characteristic or quality of an article or service, and may become a protected trade name only if it acquires a secondary meaning. *Id.* A suggestive name suggests, rather than describes, characteristics of goods or services and requires effort of the imagination by the consumer in order to be understood as descriptive. *Id.* at 1549. An arbitrary (or fanciful) term bears no logical or suggestive relation to the actual characteristics of the goods. *A.J. Canfield Co. v. Honickman*, 808 F.2d at 296. Both suggestive and arbitrary terms automatically qualify for trademark protection. *Id.* at 297.

■ Plaintiff does not make a concise argument as to whether it believes that "Healing the Children" is descriptive or suggestive. Nevertheless, we believe that there is enough evidence to conclude that the name "Healing the Children" is a suggestive mark.

First we will examine several cases where the courts found certain marks to be descriptive. One example is *Transfer Print Foils, Inc. v. Transfer Print America, Inc.*, 720 F.Supp. 425 (D.N.J.1989)

where the court found "Transfer Print Foils" to be descriptive.

> The phrase 'transfer print,' as used by plaintiff, connotes that plaintiff engages in some sort of marketing or printing through the transfer of a substance to another surface. Use of the word 'foil' in its name further suggests that the images are made through the use of foils. Taken together, it is arguable that no imagination is required for a potential consumer to reach a conclusion about the nature of plaintiff's product or services, and, as such, Transfer Print, as applied to the word 'foil' and as used in the relevant industry, is not suggestive.

*Id.* at 437.

Another example is the case of *Eagle Snacks, Inc. v. Nabisco Brands, Inc.*, 625 F.Supp. 571 (D.N.J.1985). In that case the court held that "Honey Roast" lacks the degree of inventiveness or imaginativeness that would put it over the border into the suggestive category, and thus was a descriptive mark. *Id.* at 581.

In this case, "Healing the Children," does suggest an organization which benefits children in a salutary, curative, beneficial, or remedial way. But it is only with imagination that the consumer can determine that the organization's activities include coordinating medical teams which visit foreign countries to train local medical personnel and to provide acute care and diagnostic services for local children, and organizing transportation, visas, medical care, and foster care for children referred to plaintiff by cooperating foreign governments and private agencies. Declaration of Angeles Glick, ¶ 3. We must therefore conclude that "Healing the Children" is a suggestive mark and entitled to protection under § 43(a) of the Lanham Act.

### B. *Confusion*

■ As to the second element, where the owner of the trademark and the infringer deal in competing goods or services, the court need rarely look beyond the mark itself to determine whether there is a likelihood of confusion among the relevant buyer class. *Opticians Assn. v. Independent Opticians*, 920 F.2d 187, 195 (3d Cir.1990).

Proof of actual confusion is not necessary; likelihood is all that need be shown. *Id.*

■ In this case, both plaintiff and defendant Heal the Children offer identical services in many of the same localities such as Guatemala. When we look at the names, "Healing the Children" and "Heal the Children" (or even "Heal the Children PA") we find that the only difference is the form of the verb to heal.

Plaintiffs point out two instances where actual confusion has resulted from the similarity in names. First, Terry Rutherford, plaintiff's National Executive Secretary, received a courtesy copy of a letter from Namugongo Fund for Special Children, Kampala, Uganda to the Director of Heal the Children, 555 Maple Avenue, Ridgeway, PA 15853. Declaration of Terry Rutherford, Exhibit B. This is defendant Heal the Children's address. *See* Complaint, ¶ 2. Mr. Rutherford avers that he believes that the author of the letter mistakenly believed that the plaintiff and the defendant Heal the Children are the same or associated organizations. Declaration of Terry Rutherford, ¶ 7.

Second, Dr. Ruben Ruiz Santa Cruz, Medical Director of Juan Pablo II Hospital in Guatemala City, Guatemala, avers that he was confused between the similarity of the names "Healing the Children" and "Heal the Children." Declaration of Dr. Ruben Ruiz Santa Cruz, ¶ 6. Dr. Santa Cruz had heard of the work of Heal the Children or Healing the Children in Guatemala for the past 11 years and had agreed that it would be a good idea for the organization to work at Juan Pablo II Hospital. Declaration of Dr. Ruben Ruiz Santa Cruz, ¶ 2. Around April of 1991, Judith Staeger, the executive director of Heal the Children, accompanied by an individual from Casa Guatemala, visited Juan Pablo II Hospital and informed Dr. Santa Cruz that she would return in two weeks with a couple of doctors to perform oral maxillofacial surgery on children. Declaration of Dr. Ruben Ruiz Santa Cruz, ¶¶ 2, 3. Dr. Santa Cruz informed Ms. Staeger that two weeks was not enough time to gather patients. Declaration of Dr. Ruben Ruiz San-

ta Cruz, ¶ 3. Nevertheless, the team of doctors arrived two weeks later but did not operate because there were no suitable patients. Declaration of Dr. Ruben Ruiz Santa Cruz, ¶ 4.

Then on May 20, 1991, Angeles Glick, the president of plaintiff, visited Juan Pablo II Hospital and inquired about the possibility of a visiting medical team performing surgeries at the hospital in November of 1991. Declaration of Dr. Ruben Ruiz Santa Cruz, ¶ 5. When Dr. Santa Cruz informed Ms. Glick of the events of April 1990, Ms. Glick stated that the two groups were not connected. Declaration of Dr. Ruben Ruiz Santa Cruz, ¶ 5, Declaration of Angeles Glick, ¶ 12. Dr. Santa Cruz avers that he believes that the similarity between the names Heal the Children and Healing the Children is confusing an is likely to cause confusion among doctors, hospitals, and patients in Guatemala. Declaration of Dr. Ruben Ruiz Santa Cruz, ¶ 6.

Plaintiff also asserts that because many of their activities take place in foreign countries, where many people have little or no understanding of English, the people would not be able to distinguish between "Healing the Children" and "Heal the Children" or "Heal the Children PA."

### C. *Affirmative Defense*

■ Defendant does not contest the elements of plaintiff's claim under § 43(a) of the Lanham Act. Defendant does, however assert the affirmative defense of what we interpret to be abandonment of the service mark as set out in 15 U.S.C. § 1115(b)(2).

Defendants theorize that plaintiff gave up its right to use the name "Heal the Children" in the January 1, 1989 settlement agreement. Furthermore, defendants assert that plaintiff recognized that it did not have a right to stop defendants from using the name "Heal the Children." Finally, plaintiff did not reserve the right in the January 1, 1989 agreement to stop defendants from using the name "Heal the Children," according to defendants. We find defendants' arguments to be totally unsupported and unsubstantiated and thus, we reject their abandonment defense.

The burden of proof relating to the defense of abandonment is upon the defendant. *Fotomat Corp. v. Cochran,* 437 F.Supp. 1231, 1245 (D.Kan.1977). The defendant must prove that plaintiff intended to abandon its service mark. *Id.* Minor modifications of a service mark do not constitute abandonment. *Id.* A change in a mark that does not affect the distinctive characteristics of the mark represents a continuity of the prior mark. *Id.*

In this case, defendants failed to establish that plaintiff intended to abandon its service mark. In fact, the evidence points to the contrary. Angeles Glick, the president of plaintiff, avers that when the organization agreed to change its name from "Heal the Children" to "Healing the Children," it intended to choose a name where the good will built up by the name "Heal the Children" would not be lost. Declaration of Angeles Glick, ¶ 6.

Additionally, when plaintiff filed the application to register the mark "Healing the Children" with the United States Patent and Trademark Office, the registration application specifically stated, "[t]he mark is a Modification of the mark HEAL THE CHILDREN used by application and its predecessor unincorporated association since 1978." Declaration of Angeles Glick, ex. P, p. 2.

Plaintiff cites several cases to show that minor modifications of a mark do not constitute abandonment. The only requirement in these instances is that the mark be modified in such a fashion as to retain its trademark or service mark impact and symbolize a single and continuing commercial impression. *Humble Oil & Refining Co. v. Sekisui Chemical Co.,* 165 U.S.P.Q. 597, 603 (T.M.T. Appeal Bd. 1970). That is, a change which does not alter its distinctive characteristics represents a continuity of trademark or service mark rights. *Id.* "Thus, where the distinctive character of the mark is not changed, the mark is, in effect, the same and the rights obtained by virtue of the earlier use of the prior form inure to the later form." *Id.* at 603–604 (citations omitted).

In the *Humble Oil & Refining Co.* case, the Patent Office Trademark Trial and Appeal Board held that "ESLON" is but a mere modification of "S–LON" which does not alter the inherent significance thereof and that "S–LON" and "ESLON" constitute the same trademark. *Id.* at 604. Sekisui initially modified the name "S–LON" because another corporation alleged an infringement if its trademark "SEILON." *Id.* at 165.

Similarly, in this case plaintiff undoubtedly modified its name to Healing the Children because of the claimed trademark infringement by Save the Children Federation.

Several other cases support this conclusion: *Li'l' Red Barn, Inc. v. Red Barn System, Inc.,* 322 F.Supp. 98, 108 (N.D.Ind. 1970) ("THE LI'L' RED BARN" in white, superimposed on a frontal view of a somewhat stylized red barn was modified to "LITTLE RED BARN" in white on a detailed red barn with a rooster perched on a weather vane), *aff'd,* 174 U.S.P.Q. 193 (7th Cir.1972); *Puritan Sportswear Corp. v. Shure,* 307 F.Supp. 377, 389 (W.D.Pa.1969) (mark was modified when the corporation changed it from "Puritan Sportswear, the Choice of All Americans" to "Puritan"); and *Proxite Products, Inc. v. Bonnie Brite Products Corp.,* 206 F.Supp. 511, 514 (S.D.N.Y.1962) ("Prox Bonnie Blue" was modified to "Bonnie Blue").

Each organization asserts that it has no interest in preventing the other organization from engaging in any activity on behalf of the world's children. Both parties believe that extensive and expensive litigation would detract from the salutary purpose of each organization and request that this court determine the cross motions for summary judgment on the briefs.

We conclude that there is no genuine issue of material fact and that plaintiff is entitled to judgment as a matter of law on Count II of the Complaint which is the claim under § 43(a) of the Lanham Act. We will grant plaintiff's motion for summary judgment and deny defendants' motion. Consistent with its representation to the court, we will require plaintiff to sub-

mit, within 45 days from the date of this Order, a proposed order dismissing the remaining claims of the complaint, and thus, closing the case.