564 F.2d 236
 195 U.S.P.Q. 609, 1977-2 Trade Cases 61,667
 E. L. DENTON, Wilma Denton, Jack W. Keith, Bartlett A.
Mayer, Hugh M. Hills, Emma Sue Hills, Appellants,
v.
MR. SWISS OF MISSOURI, INC., Mr. Swiss of Springfield, Inc.,
Mr. Swiss of Kansas City, Inc., Charles C.
Killingsworth, Robert J. Roundtree,
Hubert R. Shemwell and
Cormart, Inc., Appellees.
 Nos. 76-1864 to 76-1866.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 15, 1977.
Decided Oct. 7, 1977.
 
 Christopher J. Stark, Springfield, Mo., argued, made conclusion, and filed briefs for appellants.
 James T. Newsom, argued, and John C. Monica, Kansas City, Mo., on briefs, for appellees.
 Before LAY and BRIGHT, Circuit Judges, and MILLER, Judge.*
 MILLER, Judge.
 
 
 1
 In these consolidated antitrust actions, appellants seek reversal of the judgments and orders of the district court[1] (1) dismissing the antitrust count of appellants' complaints for failure to make discovery pursuant to Fed.R.Civ.P. 37(b)(2); and (2) granting summary judgment in favor of appellee Cormart, Inc., on its counterclaim, based on breach of license agreements, for (a) unpaid royalties and percentage-of-gross-sales charges specified in the agreements and for (b) a permanent injunction preventing appellants from displaying or using the "Mr. Swiss" trademark, the "Alpine Boy" logo, and a distinctive store design (sometimes referred to as "standardized system") of the "Mr. Swiss" franchise. We affirm the dismissal of the antitrust count of appellants' complaints, but reverse the summary judgment on the counterclaim of appellee Cormart, Inc., and remand the cases to the district court for further proceedings on the issues raised by the counterclaim.
 
 BACKGROUND
 
 2
 These cases involve the Mr. Swiss franchise system of fast food stores serving primarily soft ice cream and sandwiches. Appellants, at various times from 1967 to 1972, entered into Mr. Swiss license agreements with Mr. Swiss of Missouri, Inc.,[2] and have operated Mr. Swiss stores under those agreements. The complaints in these three actions were filed in November and December of 1974 and allege that appellants have been damaged as a result of a tying arrangement imposed upon them by appellees, namely: in return for use of the "Mr. Swiss" trademark, the "Alpine Boy" logo, and the distinctive store design, they were required to purchase their supplies from sources approved by appellees and to pay a royalty and a percentage-of-gross-sales charge.
 
 
 3
 On January 24, 1975, an order was entered consolidating these cases for the purposes of discovery; also, in January 1975, a pretrial order was entered in all cases under the terms of which discovery was to be completed in each case by May 10, 1975. During this discovery period, appellants did not respond to any of appellees' discovery requests, even after motions were filed by several of the appellees to compel discovery and compliance with the Federal Rules of Civil Procedure.
 
 
 4
 Thereafter, on June 19, 1975, these cases were referred to a special master pursuant to Fed.R.Civ.P. 53(b) for the supervision of discovery. The master held an initial pretrial conference on July 11, 1975, at which the outstanding motions to compel discovery were granted, and counsel for appellants was given until August 11, 1975, to completely respond to all of the existing discovery requests. A new discovery period ending December 1, 1975, was established in anticipation of trial by January 20, 1976.
 
 
 5
 Appellants did not attempt to comply with the discovery orders of July 11, 1975,[3] until September 11, 1975, at which time the master held a pretrial conference to discuss the matter of noncompliance with the orders. Answers to some interrogatories were filed with the court, but they were "wholly deficient, revealing little or nothing respecting the factual contentions supporting the (appellants') claims." In an attempt to explain the failure to comply, appellants' counsel (at that time) responded that the delay was due in part to appellants' "fragmented" records and that his requests to appellants' bookkeepers "were simply not complied with," resulting in his having to do the work alone. He suggested that part of the delay was attributable to appellants themselves.
 
 
 6
 On September 19, 1975, because of the failure to make discovery and the incompleteness of answers to interrogatories on the crucial issues of injury and damages, the master imposed sanctions of a then undetermined amount upon appellants' counsel and directed that offers of proof be made by him on these crucial issues by September 25, 1975. Appellants were cautioned that "continued failure to make discovery will certainly . . . require dismissal of one or more of these actions."
 
 
 7
 By November 7, 1975, these offers of proof with the proper specificity had not yet been presented to the court; accordingly, a pretrial conference was scheduled for November 14, 1975. At that conference, offers of proof were presented, but the master, as well as appellants' counsel, acknowledged that they were inadequate and incomplete. The master ordered appellants to file with the court by December 1, 1975, the materials and information that would satisfy the order for offers of proof and would also respond to yet unanswered interrogatories. However, the order of November 14, met with noncompliance. Belatedly, appellants asked for an extension of time for completion of discovery until March 15, 1976. Although the master extended discovery until December 31, 1975, appellants did not produce any colorable compliance with that order until an extensive pretrial conference held on January 5-7, 1976.
 
 
 8
 At this pretrial conference, appellants presented offers of proof with respect to comparative prices of supplies during the time periods in question, but complete offers of proof on the issues of injury and damages were not presented, either in the form of written offers of proof or answers to interrogatories. During this conference, the master explained the status of the lawsuits to several of the appellants in detail and specifically advised them of the failings of their counsel. The special master then allowed appellants until January 28, 1976, to move for leave to file supplemental answers to interrogatories out of time. Appellants failed to so move. In an order dated January 30, 1976, the master further extended the time for appellants to file their narrative pretrial briefs, specifically stating that these briefs should adequately cover the issues of injury and damages, which appellants had theretofore failed to do. Appellants also failed to meet this deadline; instead, they filed narrative pretrial briefs which were in general and conclusory terms and amounted to little more than restatements of the amended complaints.
 
 
 9
 Meanwhile, on October 14, 1975, appellee Cormart counterclaimed for unpaid royalties and percentage-of-gross-sales charges and for the above-referred to permanent injunction. In January 1976, appellees moved for dismissal and/or for summary judgment on count I (the federal antitrust count) of the complaints.[4]
 
 
 10
 On February 18, 1976, appellants moved for summary judgment on appellee Cormart's counterclaim. Appellants maintained that the license agreements were void and unenforceable under the federal antitrust laws, that they were contrary to the public policy of Missouri, and that Cormart was not the true owner of the trademarks and logo.
 
 
 11
 The master, on March 22, 1976, filed his final report with the district court in which he recommended, inter alia :
 
 
 12
 1. That count I (federal antitrust count) of each of appellants' complaints be dismissed for failure to make discovery.
 
 
 13
 2. That count I of each of the appellants' complaints be dismissed because none could show damage to their business or property as required by 15 U.S.C. § 15.
 
 
 14
 3. That appellants' store license agreements be terminated in accordance with their terms due to appellants' material breach of the agreements, as well as appellants' and appellees' mutual desire for such termination.
 
 
 15
 4. That appellants' further use of the "Mr. Swiss" trademark, the "Alpine Boy" logo, and the distinctive store design be enjoined upon termination of the license agreements pursuant to the terms thereof.
 
 
 16
 5. That summary judgment be granted in favor of appellee Cormart on its counterclaim based on breach of license agreements for all unpaid royalties and percentage-of-gross-sales charges due from each appellant, plus accumulated interest.
 
 
 17
 6. That all other counts (trademark infringement, unfair competition, and violation under Missouri Antitrust Law) of appellee Cormart's counterclaim be dismissed either because of the injunctive relief recommended by the master or because of lack of independent federal jurisdiction.
 
 
 18
 7. That Charles M. Edwards, counsel for appellants (at that time), pay sanctions in the sum of $3,388.16 as the reasonable attorneys' fees and expenses necessarily expended by appellees in attempting to obtain material discovery in this action.
 
 
 19
 The report and recommendations of the master were adopted by the district court.
 
 OPINION
 
 20
 Dismissal of Count I of Appellants' Complaint
 
 
 21
 Appellants argue that the district court erred as a matter of law and abused its discretion by dismissing, pursuant to Fed.R.Civ.P. 37(b)(2), count I of all complaints for failure to make discovery.
 
 
 22
 The Federal Rules of Civil Procedure give the trial court broad discretion in imposing sanctions upon parties who fail to make discovery. However, the due process clause of the Fifth Amendment to the Constitution limits the power of courts to dismiss an action without affording a party the opportunity for a hearing on the merits, Societe Internationale v. Rogers,357 U.S. 197, 209, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958), and the rule itself requires the court to enter such orders "as are just." Nevertheless, the district court's action will not be reversed unless there has been an abuse of discretion. Fox v. Studebaker-Worthington, Inc., 516 F.2d 989, 993 (8th Cir. 1975); 4A Moore's Federal Practice P 37.08 at 37-112 to 37-113 (2d ed. 1975).
 
 
 23
 The record before us clearly discloses a course of conduct amounting to flagrant noncompliance with the orders of the court and the Federal Rules of Civil Procedure which resulted in delaying litigation and frustrating discovery. Appellants do not deny the consistent failure of their prior counsel to respond to discovery requests and his complete disregard of repeated court orders without adequate or timely explanation. Appellants' current counsel, at oral argument, admitted that "the record is very clear in this case that there were numerous very serious violations of nearly every rule of civil procedure that I know of and of discovery."
 
 
 24
 As a result of appellants' noncompliance with the orders of the court and the Federal Rules of Civil Procedure and their failure to adequately answer interrogatories, appellees and the court were not informed on the paramount issues of injury and damages. See Haverhill Gazette Co. v. Union Leader Corp., 333 F.2d 798, 802 (1st Cir.), cert. denied, 379 U.S. 931, 85 S.Ct. 329, 13 L.Ed.2d 343 (1964). Moreover, the record clearly shows that appellants' prior counsel was aware of the evidence involved, yet failed to make discovery. The master specifically found appellants' noncompliance to be willful due to their complete disregard of repeated orders of the court, their inaction during an entire discovery period, and their insufficient and defective offers of discovery eventually made even after numerous extensions of time running over more than a year.
 
 
 25
 When a party's willfulness or bad faith is involved in failure to make discovery, the sanction of dismissal is proper. Societe Internationale v. Rogers, supra; Emerick v. Fenick Industries, Inc., 539 F.2d 1379, 1381 (5th Cir. 1976). It is also proper where there has been a willful failure to answer interrogatories. Fox v. Studebaker-Worthington, Inc., supra; General Dynamics Corp. v. Selb Manufacturing Co., 481 F.2d 1204, 1211 (8th Cir. 1973). This is particularly so when, as here, such failure makes it impossible to determine the factual merits of a claim. Marriott Homes, Inc. v. Hanson, 50 F.R.D. 396, 400 (W.D.Mo.1970).
 
 
 26
 Appellants argue that, even if willful, the failures to make discovery and to obey orders of the court were the sole fault of their counsel, that they should not be held responsible for his actions, and that the district court may not dismiss their action without a specific finding that appellants, themselves, willfully, deliberately, or in bad faith failed to comply with the court's orders. They rely primarily on Edgar v. Slaughter, 548 F.2d 770 (8th Cir. 1977), in which this court reversed the district court's dismissal of the complaint pursuant to Fed.R.Civ.P. 37(b)(2) for failure to comply with an order requiring answers to interrogatories, saying, at 773:
 
 
 27
 Dismissal and entry of a default judgment should be the rare judicial act. When noncompliance is the result of dilatory conduct by counsel, the courts should investigate the attorney's responsibility as an officer of the court and, if appropriate, impose on the client sanctions less extreme than dismissal or default, unless it is shown that the client is deliberately or in bad faith failing to comply with the court's order.
 
 
 28
 Appellants argue that Edgar stands for the proposition that a district court may never impose the sanction of dismissal unless the parties themselves have willfully or in bad faith failed to make discovery or to comply with orders of the court. We do not agree. In Edgar, the court was considering a single failure to answer interrogatories accompanied by what appear to have been mitigating factors.[5] Under such circumstances, this court said that a district court should investigate the conduct of a litigant's counsel to determine whether less extreme sanctions against the attorney or client would be "a more just and effective sanction," unless it is shown that the client's failure was deliberate or in bad faith. The court merely suggested that, absent bad faith on the part of the client, other sanctions should be considered. It did not hold that dismissal was precluded as a sanction.
 
 
 29
 In the cases before us, the master and the district court clearly considered other sanctions available for imposition on appellants and their counsel. The record discloses numerous warnings to appellants and their counsel of the potentially serious consequences of their continued noncompliance. Moreover, appellees were clearly prejudiced by appellants' noncompliance since, without information concerning appellants' alleged injury and damages, they could not be expected to adequately prepare their case for trial.
 
 
 30
 To interpret Edgar as appellants propose would place that case in conflict with the well-established principle that a party is responsible for the actions and conduct of his counsel and that, under appropriate circumstances, dismissal or default may be entered against a party as a result of counsel's actions. Link v. Wabash Railroad, 370 U.S. 626, 633-34, 82 S.Ct. 1386, 1390-91, 8 L.Ed.2d 734, 739-40 (1962); Gulf Oil Co. v. Bill's Farm Center, Inc., 449 F.2d 778 (8th Cir. 1971).
 
 
 31
 Also, the record indicates that appellants, themselves, were to some extent at fault for the failure to make discovery. Both the district court and the master noted in their respective order and report that the failure to make discovery was a combination of both appellants' and their counsel's actions, and this is clearly supported by the record. Prior to dismissal, both appellants and their counsel were afforded numerous opportunities to explain their failure to make discovery.[6]
 
 
 32
 Accordingly, we hold that the district court did not abuse its discretion when it dismissed appellants' complaints. National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976). The judicial system cannot tolerate litigants who flagrantly refuse to comply with the orders of the court and who refuse to make discovery, for "(d)elay and evasion are added burdens on litigation, causing waste of judicial and legal time, are unfair to the litigants and offend the administration of justice." Gulf Oil Co. v. Bill's Farm Center, Inc., supra at 779.[7]
 
 Summary Judgment on Cormart's Counterclaim
 
 33
 We next consider the issue of whether the district court properly granted summary judgment in favor of Cormart on its counterclaim for unpaid royalties and percentage-of-gross-sales charges and for an injunction against appellants' further use of the "Mr. Swiss" trademark, the "Alpine Boy" logo, and the distinctive store design.
 
 
 34
 The record shows that on February 18, 1976, appellants moved for summary judgment on Cormart's counterclaim, and on February 26, 1976, Cormart filed an opposition to this motion. No hearing was noticed or held. However, in the master's report of March 22, 1976, it was recommended that summary judgment on this counterclaim be granted in favor of Cormart. Since the district court followed this recommendation and sua sponte[8] granted affirmative relief to Cormart without a motion or a hearing, we do not have an adequate record upon which to evaluate the district court's action. Moreover, the parties' briefs make conflicting allegations over facts that cannot be determined from the record. Such facts cannot be in dispute if summary judgment is to be properly granted.
 
 
 35
 Although the trial court may assist, through pretrial proceedings, in sharpening the issues, it may not grant summary judgment without a motion therefor. Fed.R.Civ.P. 56 provides for service of a motion for summary judgment, an opportunity for service of opposing affidavits, and a hearing. This circuit has taken the position that the rule is to be strictly followed. Twin City Federal Savings & Loan Association v. Transamerica Insurance Co., 491 F.2d 1122 (8th Cir. 1974); see Parmelee v. Chicago Eye Shield Co., 157 F.2d 582 (8th Cir. 1946); Taylor v. Royal Insurance Co., 34 F.R.D. 132 (W.D.Mo.1963); accord, Sharlitt v. Gorinstein, 535 F.2d 282 (5th Cir. 1976).[9]
 
 
 36
 Accordingly, we hold that the district court improperly granted summary judgment on appellee Cormart's counterclaim.
 
 
 37
 Upon remand of these cases, the district court should determine whether Cormart is the assignee of the Mr. Swiss store license agreements and the holder of an interest in the "Mr. Swiss" trademark, the "Alpine Boy" logo, and the distinctive store design.[10] We note that the record does not contain sufficient documentation showing Cormart to be the real party in interest. If Cormart does not have rights under the contract or if there is no privity between Cormart and appellants, there can be, of course, no injury or damages based upon breach of the contract.
 
 
 38
 The parties contend that the consideration of the contract for which the royalties and percentage-of-gross-sales charges are to be paid is the licensor's ownership of the "Mr. Swiss" trademark, the "Alpine Boy" logo, and the distinctive store design. Appellants argue that Cormart does not have any common law or statutory trademark rights in "Mr. Swiss" or the logo;[11] also, that a distinctive store design cannot be registered as a trademark and can only be protected by a design patent, which appellees have not alleged they own.[12] If, as appellants contend, Cormart does not own or have rights in these trademarks and the distinctive store design, it obviously is not entitled to an injunction preventing appellants from using them; nor is it entitled to royalties and percentage-of-gross-sales charges attributable thereto.
 
 
 39
 Whether based upon breach of contract or trademark infringement, injunction against a former licensee can only be granted with respect to valid trademarks.[13] A franchisor has no protectable interest in the mere method and style of doing business. 1 J. McCarthy, Trademarks and Unfair Competition, § 18:20 at 647-48 (1973), and cases cited therein. Therefore, appellants' allegations of nonexistent trademarks and unprotectable designs present issues that must be decided before any injunction can be properly imposed on appellants. Also, we note that the license contains the vague and ambiguous term "standardized system" for which, without more, no injunction can properly issue. Cormart has attempted to define "standardized system" as the distinctive store design. However, even if it is shown that this is the correct meaning of the term, protectability must be established.
 
 
 40
 Finally, upon remand the district court should reconsider, in light of Kelly v. Kosuga, 358 U.S. 516, 79 S.Ct. 429, 3 L.Ed.2d 475 (1959), and its progeny, appellants' defense (to Cormart's counterclaim) that the license agreements violate the federal antitrust laws.[14] In Kelly, the Court noted that, as a defense to an action based on contract, "the plea of illegality based on violation of the Sherman Act has not met with much favor in this Court. This has been notably the case where the plea has been made by a purchaser in an action to recover from him the agreed price of goods sold." Id. at 518, 79 S.Ct. at 431. Nevertheless, the Court said that a contract should not be enforced where a court "would itself be enforcing the precise conduct made unlawful by the (Sherman) Act." Id. at 520, 79 S.Ct. at 432.
 
 
 41
 Appellants allege, and the district court did not find to the contrary, that the royalties and percentage-of-gross-sales charges are inextricably woven into the alleged illegal tying agreement with appellees, and that by enforcing payment of these royalties and percentage-of-gross-sales charges the court would be enforcing the precise conduct made unlawful by the antitrust laws. Such an allegation should be considered by the district court. Also, if the court should find that Cormart is not the owner of all the trademarks and designs specified in the license or that they do not exist, appellants' allegation that these marks and designs are inextricably woven into an alleged illegal tying agreement would be strengthened. We note that several of the cases cited by appellees, including Helfenbein v. International Industries, Inc., 438 F.2d 1068 (8th Cir. 1971), are distinguishable from the instant situation. Also, we have found no case diverging from the Supreme Court's admonition that courts should not enforce contracts where this would result in enforcing conduct constituting an antitrust violation.
 
 
 42
 The judgments and orders of the district court with respect to appellee Cormart's counterclaim are reversed, and the cases are remanded for further proceedings in accordance with this opinion.
 
 
 
 *
 The Honorable Jack R. Miller, Judge, United States Court of Customs and Patent Appeals, sitting by designation
 
 
 [1]
 The Honorable William R. Collinson, United States District Judge, Western District of Missouri
 
 
 [2]
 Mr. Swiss of Missouri, Inc., held the franchise for the geographical territory here involved under a 1966 agreement with Mr. Swiss of America, Inc. (not a party in these proceedings). Mr. Swiss of America was apparently, in 1966, the owner of the "Mr. Swiss" trademark, the "Alpine Boy" logo, and a distinctive store design
 
 
 [3]
 Appellants made an untimely request for an extension of time to August 18, 1975
 
 
 [4]
 Subsequent to this motion, appellants Hills, Keith, and Mayer fully settled their claims for damages under the antitrust count of their complaints with defendant Beatrice Foods Co
 
 
 [5]
 The court noted that the defendants had not shown how plaintiff's delay in answering interrogatories had been prejudicial
 
 
 [6]
 The district court's order assesses appellants' pretrial counsel with appellees' reasonable attorneys' fees and costs for one such failure. The propriety of this sanction is not presented on this appeal
 
 
 [7]
 Because we affirm the district court's dismissal of appellants' complaints, we do not reach additional issues of whether the district court properly granted summary judgment in favor of appellees on those complaints and whether the settlement with Beatrice Foods Co. by Hills, Keith, and Mayer precludes their right to also recover from appellees
 
 
 [8]
 At oral hearing the parties conceded that there was no motion by Cormart for summary judgment
 
 
 [9]
 Some circuits have allowed such sua sponte action under particular circumstances. Wirtz v. Young Elec. Sign Co., 315 F.2d 326 (10th Cir. 1963); Procter & Gamble Independent Union of Port Ivory v. Procter & Gamble Mfg. Co., 312 F.2d 181 (2d Cir. 1962); see Sibley Memorial Hospital v. Wilson, 160 U.S.App.D.C. 14, 488 F.2d 1338 (1973)
 
 
 [10]
 The district court may also wish to reconsider its dismissal of appellees' other counterclaims, which are based upon trademark infringement, unfair competition and violation of the Missouri Antitrust Law, in light of this opinion. Alternatively, the court may wish to consider whether all counterclaims should be dismissed for lack of independent federal jurisdiction. If, as appellants allege, there are no federally registered trademarks, subject matter jurisdiction would be in doubt
 
 
 [11]
 In Cormart's brief in opposition to appellants' motion for summary judgment, Cormart noted that it would be required to prove at trial the ownership of the trademark and logo; and it stated that "(s)uch an argument itself recognizes that there is a genuine issue of fact for trial." This issue between the parties is shown by a statement of appellees' counsel at oral hearing that "registration certificates (of the trademarks) were attached to the plaintiffs' exceptions to the special master's report, and they claim that at some point the registrations were cancelled; in fact, they have not been cancelled."
 
 
 [12]
 Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964), and Compco Corp. v. Day-Brite Lighting, Inc., 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964), have raised questions about protection (of trademark rights or from unfair competition) of the design of a building. However, at least two courts have been willing to grant protection to a building design. Fotomat Corp. v. Cochran, 437 F.Supp. 1231, 194 U.S.P.Q. 128 (D.Kan.1977); Fotomat Corp. v. Houck, 166 U.S.P.Q. 271 (Fla.Cir.Ct.1970)
 
 
 [13]
 Under certain circumstances a licensee will be estopped from denying the validity of trademarks which he acknowledges as valid in a license agreement. Seven-Up Bottling Co. v. Seven-Up Co., 561 F.2d 1275, 195 U.S.P.Q. 106 (8th Cir. 1977); accord, Danskin Inc. v. Dan River, Inc., 498 F.2d 1386, 182 U.S.P.Q. 370 (C.C.P.A.1974)
 
 
 [14]
 In its order, the district court summarily concluded that Kelly v. Kosuga, supra, was applicable and that federal law exclusively controlled. Applying Kelly, the court stated that the "alleged tying aspects (appellants' defense) can not (sic ) provide any defense to the duty to make those payments."