# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2934

_____

| | | |
|---|---|---|
| Scenic Holding, LLC, | * | |
| | * | |
| Plaintiff/Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| The New Board of Trustees of the | * | |
| Tabernacle Missionary Baptist Church, | * | |
| Inc.; Michael R. Thompson, trustee and | * | |
| representative (not individually) of the | * | |
| New Board of Trustees of the | * | |
| Tabernacle Missionary Baptist Church; | * | |
| Joe Givens, trustee and representative | * | |
| (not individually) of the New Board of | * | |
| Trustees of the Tabernacle Missionary | * | Appeal from the United States |
| Baptist Church; Vince Howard, trustee | * | District Court for the |
| and representative (not individually) of | * | Eastern District of Arkansas. |
| the New Board of Trustees of the | * | |
| Tabernacle Missionary Baptist Church; | * | |
| Casey Roberts, trustee and | * | |
| representative (not individually) of | * | |
| Tabernacle Baptist Church, | * | |
| | * | |
| Defendants/Appellees, | * | |
| | * | |
| Keith Molden, Trustee of Tabernacle | * | |
| Missionary Baptist Church; Wilson | * | |
| Medlock, Trustee of Tabernacle | * | |
| Missionary Baptist Church; David | * | |
| Surratt, Trustee of Tabernacle Baptist | * | |

Church; Don Molden, Trustee of       *
Tabernacle Missionary Baptist Church,   *
                                            *

         Intervenor Defendants/      *
         Appellees.                *

_____

Submitted: April 12, 2007
Filed: November 6, 2007

_____

Before LOKEN, Chief Judge, BYE and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

Scenic Holding, LLC (Scenic), brought suit against the New Board of Trustees of the Tabernacle Missionary Baptist Church (New Board), as well as several trustees and representatives of the Tabernacle Missionary Baptist Church (Tabernacle), seeking to collect on a note executed by the New Board and to foreclose a mortgage on property belonging to Tabernacle. As an initial matter, the district court[1] denied Scenic's motion to recuse. After a bench trial, the district court found the note valid against the New Board, but denied Scenic's request for foreclosure because Scenic failed to prove the New Board had authority to encumber Tabernacle's property. Scenic appeals, arguing the district court erred in (1) denying Scenic's motion to recuse, (2) dismissing eight counts from Scenic's third amended complaint, (3) placing on Scenic the burden of proving the New Board's authority to bind Tabernacle, and (4) excluding certain evidence at trial. We affirm.

_____

[1]The Honorable George Howard, Jr., now deceased, United States District Judge for the Eastern District of Arkansas.

-2-

## I.  BACKGROUND

Tabernacle is a Baptist church located in Little Rock, Arkansas.  Baptist churches are congregational churches in form and structure, meaning such churches determine their affairs "by the vote of the majority of the members of that church and not by some other hierarchical form of church government."  Carter v. Phillips, 722 S.W.2d 590, 592 (Ark. 1987); see also McCree v. Walker, 101 S.W.3d 276, 278 (Ark. Ct. App. 2003).  See, e.g., Elston v. Wilborn, 186 S.W.2d 662, 663 (Ark. 1945) ("In congregational groups the affairs are determined by the vote of the majority of the members.").  Similarly, Tabernacle's canons provide that Tabernacle's executive power is vested in a board of trustees consisting of three members elected at Tabernacle's annual general assembly meeting.  The canons also provide the board of trustees may not mortgage Tabernacle's real or personal property without prior approval of a two-thirds majority vote of members present and voting at a Tabernacle meeting for which notice of the proposed action was given.

In 1997, Tabernacle bought real property in Little Rock for $550,000, and financed the purchase through a loan (1997 mortgage) from Superior Federal Bank (Superior).  On January 15, 1999, Joe Givens (Givens), Vince Howard (Howard), and Carl Hunter, acting as Tabernacle trustees, executed a $550,000 note to Superior, secured by a first mortgage on Tabernacle's real and personal property (1999 mortgage).  Tabernacle used the loan proceeds to pay off the 1997 mortgage.

Sometime during 1999 or 2000, twelve Tabernacle members met for the purpose of organizing a non-profit corporation.  Tabernacle's members neither received notice of nor approved this meeting as required by Tabernacle's canons.  During the meeting, Tabernacle's pastor appointed three members to serve as trustees of a newly-formed non-profit corporation referred to as the New Board.  The New Board's three trustees and officers included chairman Michael Thompson (Thompson), vice chairman Givens, and treasurer Howard.

By early 2000, Tabernacle's payments on the 1999 mortgage became delinquent, and Tabernacle representatives met in June with Superior to discuss the delinquency. When Tabernacle asked for an additional loan, Superior requested the signatures of the Tabernacle's board of trustees or minutes from the trustees' meeting approving Tabernacle's loan request. On July 11, 2000, in a letter bearing Tabernacle's logo and entitled "Notice Letter of Authorization," the New Board stated it was authorized to take any action necessary to carry out the loan proposal.

On March 27, 2001, the New Board executed a loan agreement with Superior. The loan agreement was signed on behalf of the New Board by Thompson, Givens, and Howard in their official capacity as officers and trustees. The same day, Thompson, Givens, and Howard, again acting on behalf of the New Board, executed a multipurpose note and security agreement (2001 note) in the amount of $532,502.29 in favor of Superior and secured by the same Tabernacle property designated in the 1999 mortgage. The three men also signed a modification of the 1999 mortgage between the Tabernacle trustees and Superior, but signed the document as Tabernacle trustees, not on behalf of the New Board. The New Board later defaulted on its payments under the 2001 note, and on September 25, 2001, the New Board signed an extension and amendment to the 2001 note, as well as another modification of the 1999 mortgage.

On December 12, 2002, Superior and Scenic entered into an agreement for Scenic to purchase the New Board's 2001 note for $150,000. Superior assigned the 2001 note, the 1999 mortgage, and other loan documents to Scenic, and also agreed to assign "[s]uch other assignments and documents necessary to assign and transfer the Loan Documents and liens of Superior." Under the agreement, Superior warranted that the 2001 note matured on September 25, 2002, and the New Board was in default.

On July 25, 2003, Scenic filed suit in federal district court against the New Board, seeking a judgment on the 2001 note in the amount of $538,561.21 and

foreclosure of a mortgage on Tabernacle's property securing the 2001 note. The New Board denied the 2001 note was secured, and also alleged the New Board lacked authority to encumber Tabernacle's property and a defect of parties. Scenic filed an amended complaint, adding Thompson, Givens, and Howard as defendants. Scenic later filed a second amended complaint adding Casey Roberts, in his capacity as Tabernacle's trustee and representative. Four other individuals later intervened as defendants in their capacity as trustees of Tabernacle (collectively, the Intervenor Trustees). The defendants argued Tabernacle and the New Board were separate and distinct entities. They further argued Tabernacle had no responsibility for the obligations incurred by the New Board because no meeting of Tabernacle's congregation had been called or held to approve either the 1999 note and mortgage or the 2001 note and modification to the 1999 mortgage.

On January 16, 2004, Scenic moved the district court to appoint a receiver to take charge of and protect the mortgaged property, a portion of which had been damaged by a fire in February 2003 and still was being used by Tabernacle. A hearing on Scenic's motion for the appointment of a receiver was held on January 27 and 28, 2005. The district court denied Scenic's motion on February 8, 2005. One week later, Scenic moved for summary judgment against the New Board and incorporated by reference its previously-filed motion for a ruling on the merits of its claims. The district court denied Scenic's summary judgment motion based on lack of mutuality of obligations in the agreement between Scenic and the New Board, and further held Scenic's motion for a ruling on the merits was moot. Scenic then moved for recusal under 28 U.S.C. § 455(a), arguing the district court's rulings and conduct demonstrated an appearance of partiality. The district court denied Scenic's recusal motion.

-5-

On March 29, 2006, Scenic filed a third amended complaint, asserting eight new causes of action.[2]  In their answer to the third amended complaint, the Intervenor Trustees alleged as affirmative defenses that Superior had not assigned the new causes of action to Scenic, and Scenic lacked standing to sue on the new claims because Arkansas law prohibited the assignment of the claims.

A bench trial commenced on April 17, 2006.  During cross-examination of Scenic's last witness on the third day of trial, Scenic's representative, Sam McGee (McGee), testified Superior's assignment to Scenic in 2002 did not refer to or specifically describe the eight new causes of action.  McGee then testified Superior had executed a "general assignment" of loan documents to Scenic.  McGee produced a document, which had been acknowledged on April 14, 2006, purporting to assign all the contract and tort claims.  The document had not been seen before by counsel for any of the parties.

The New Board and the Intervenor Trustees argued: (1) Scenic did not have an assignment of the eight new causes of action; (2) Arkansas law prohibited the assignment of claims not authorized by statute, and thus prohibited the eight new claims set forth in Scenic's third amended complaint; and (3) under Arkansas law, Superior's successor, Arvest Bank (Arvest), was an indispensable party and must be joined, which would destroy diversity jurisdiction and require dismissal of the case. After extensive argument by counsel for all the parties, the district court directed Scenic to add Arvest as a party plaintiff and suggested when Arvest was joined the district court would dismiss the case.  The following day, Scenic's counsel informed the district court that because Arvest refused to join the action, Scenic's counsel had

---

[2]These new claims included: (1) implied, quasi, or constructive contract; (2) express, apparent, or implied agency; (3) laches, estoppel, unjust enrichment, and unclean hands; (4) waiver and ratification; (5) implied, constructive, or resulting trust; (6) reformation and rescission; (7) equitable subrogation; and (8) actual or constructive fraud.

-6-

filed a fourth amended complaint adding Arvest as an involuntary plaintiff without Arvest's approval or permission. To avoid placing Scenic's counsel in an unstable relationship with Arvest, the district court struck Scenic's eight new causes of action from the third amended complaint, finding (1) Arvest was a necessary and indispensable party, (2) Scenic failed to disclose the general assignment before trial commenced, and (3) the defendants thus were unable to cross-examine effectively Scenic's witnesses and to defend against the newly asserted claims.

After the trial, the district court held the note executed by the New Board was valid but unsecured, because (1) the New Board and Tabernacle were separate entities, and (2) Scenic failed to prove the New Board or its three individual officers were authorized to represent Tabernacle for the purpose of executing the multipurpose note and modification of the 1999 mortgage. This appeal followed.

## II. DISCUSSION
### A. Denial of Motion to Recuse

Scenic contends the district court erred in denying Scenic's motion to recuse because the district judge appeared biased in favor of the defendants based on the defendants' religious affiliation. We review for abuse of discretion the denial of a motion to recuse. Moran v. Clarke, 296 F.3d 638, 648 (8th Cir. 2002) (en banc). Under 28 U.S.C. § 455(a), a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Because § 455(a) sets forth an objective standard, whether a judge actually is biased or actually knows of a ground requiring recusal is irrelevant. Moran, 296 F.3d at 648. Rather, the issue is "whether the judge's impartiality might reasonably be questioned by the average person on the street who knows all the relevant facts of a case." Id. (quotation omitted). "Because a judge is presumed to be impartial, a party seeking recusal bears the substantial burden of proving otherwise." United States v. Martinez, 446 F.3d 878, 883 (8th Cir. 2006). We presume the honesty, integrity, and impartiality of those serving as judges. See Dyas v. Lockhart, 705 F.2d 993, 997 (8th Cir. 1983). The Supreme Court has

recognized that "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." Liteky v. United States, 510 U.S. 540, 555 (1994). Nor do "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display." Id. at 555-56.

Scenic asserts the following actions by the district judge demonstrate a reasonable appearance of bias: (1) crediting a witness's testimony because the witness was a church member; (2) allowing cross-examination of Scenic's witnesses regarding their religious affiliations on the basis it implicated credibility; (3) allowing cross-examination of witnesses regarding their knowledge of the Baptist denomination; (4) questioning one of Scenic's witnesses based on the district judge's extrajudicial knowledge regarding the Baptist denomination; (5) making unnecessary statements on the basis of the defendants' religious affiliations; (6) making unwarranted, sua sponte objections to Scenic's counsel leading an adverse witness who was also a defendant; (7) allowing repeated witness voir dire by defense counsel; (8) refusing to admit over thirty proffered plaintiff exhibits; (9) prohibiting Superior's loan officer from testifying on certain matters relevant to Scenic's claims; (10) denying Scenic's motion for summary judgment after raising an issue sua sponte without allowing Scenic to respond; and (11) engaging in other conduct demonstrating an unfavorable predisposition to Scenic.

Many of Scenic's characterizations of the district judge's conduct distort the record and are taken out of context. For instance, Scenic contends the district judge inappropriately rebuked Scenic's counsel for questioning Givens's honesty and then credited Givens's testimony on the basis of his Baptist denomination. During the receivership hearing, Scenic's counsel attempted to enter an exhibit for the purpose of demonstrating that the New Board and Tabernacle functioned as the same entity. The district judge rejected counsel's offer, noting Givens had just testified the two

entities were not one and the same. Scenic's counsel replied, "He's lying, Your Honor." The district judge responded the witness was "under oath to tell the truth and he's a church member." He instructed Scenic's counsel, "As an officer of the court you must respect a witness," and further stated, "Don't allege for the record that [the witness] is lying when he has taken an oath to tell the truth."

Contrary to Scenic's assertions, nothing indicates the district judge improperly credited Givens's testimony on the basis of his religious affiliation or beliefs. The circumstances of this case and the law applicable to Scenic's ability to foreclose a mortgage on Tabernacle's property necessitated, or, at a minimum, justified, an examination of matters of congregational church governance and of Tabernacle members' authority to encumber church property. Thus, reviewing the aforementioned exchange in context leads us to conclude the district judge probably noted Givens, by virtue of being a Tabernacle member, had personal knowledge to testify about matters of congregational organization and governance.

For similar reasons, the allowance of cross-examination of Scenic's witnesses regarding their religious affiliations and their knowledge of the Baptist church did not require the district judge's recusal. The witnesses in question were loan officers of Superior and were called by Scenic to testify about the validity of the 1999 mortgage and the 2001 note assigned to Scenic by Superior. Both witnesses were asked whether they were members of the Baptist church, and whether they were familiar with or had investigated either the organization of Baptist churches or the authority of church trustees to mortgage or transfer church property. We reject Scenic's assertion that allowing such relevant questioning improperly injected religion-based bias into this legal dispute.

Scenic also challenges the district judge's questioning of one of Scenic's witnesses based on the district judge's "extrajudicial knowledge regarding the Baptist

denomination."[3] "[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings . . . do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." Id. Here, the district judge's questions do not reveal or suggest unequivocal favoritism or antagonism, and Scenic fails to demonstrate such questions were improperly derived from impermissible extrajudicial knowledge rather than on the record of the case itself or from representations made by the parties or their attorneys. See White v. Luebbers, 307 F.3d 722, 731 (8th Cir. 2002) ("So long as the court's expressed views come from the record of the case itself, or from representations properly made by the parties or their lawyers, nothing improper has occurred.").

In further support of its bias argument, Scenic notes that in the receivership hearing the district judge repeatedly interrupted Scenic's counsel during direct examination of Givens and instructed Scenic's counsel to avoid asking leading questions. Scenic called the defendant Givens as a witness; thus, Givens was an adverse witness. Scenic contends the district judge's sua sponte objections violate Federal Rule of Evidence 611(c), which allows a party to conduct an examination using leading questions when an adverse witness is called. The standard, acceptable, and preferred procedure is to permit counsel to lead an adverse or hostile witness on direct examination. However, Rule 611(c) is permissive and must be read in context with the trial court's general authority and discretion to control the conduct of the trial. The impact of the district court's ruling, however, appears minuscule, particularly when Scenic does not allege the district judge denied any request *during*

---

[3]The portion of the transcript cited by Scenic indicates the district judge inquired whether Scenic's witness had "knowledge that a pastor is usually, of a Baptist church, is not a member of the church but is an employee," or was aware of "a contractual relationship between the church and the pastor."

*trial* to pose leading questions to this witness.[4]  We perceive no substantial right of Scenic was affected.  See Fed. R. Evid. 103(a).

Scenic argues other examples of the district judge's bias occurred when the district judge sustained an objection on the ground of speculation, commenting, "The Good Lord hasn't empowered us to tell what's in the crevices of the mind as of this time."  Later, in denying Scenic's motion for a receiver, the district judge stated, "I'd like to emphasize, here is a religious constitution committed to upholding the standards of Christ, that is, be right and righteous.  Here is an entity with more than a hundred members who are dedicated to serving mankind and treating neighbors and associates in a Godly fashion."  Notwithstanding the questionable propriety of these judicial comments, we must view them under the totality of the circumstances, and not in isolation.  Upon doing so, we reject Scenic's assertion that these statements would demonstrate an apparent bias in favor of the defendants when evaluated by the average person on the street knowing all the relevant case facts.

The inquiry whether a reasonable person, informed of all the relevant facts and circumstances of the case, would perceive bias or partiality by a judge warrants consideration of the judge's course of rulings and conduct.  Moran, 296 F.3d at 649.  In arguing the district judge's rulings and conduct contributed to the appearance of religious favoritism and thus required recusal, Scenic challenges a multitude of unfavorable rulings or remarks by the district judge that occurred during the receivership hearing and the later trial on the mortgage foreclosure action.  Although we recognize Scenic's dissatisfaction with the district judge's rulings and conduct, we

---

[4]During trial, Scenic again called Givens, which prompted the district judge to inquire whether Givens was "a 611(c) witness."  After Scenic's counsel and the district judge debated whether leave had to be obtained to pose leading questions, counsel ultimately stated that if cross-examination of the witness became necessary, counsel would request permission to pose leading questions.  The district judge responded, "All right, I'll grant it then."

decline to deem them evidence of bias or partiality. The grounds Scenic asserts in favor of recusal consist mainly of judicial rulings, routine trial administration, and unremarkable admonishments, all of which are inadequate to require the district judge's disqualification. See Liteky, 510 U.S. at 555, 556 (recognizing "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion"). Keeping in mind Scenic's substantial burden to prove bias and partiality, we conclude an average observer, being informed of all the facts and circumstances of the case, would not reasonably question the district judge's impartiality. Thus, the district court did not abuse its discretion in denying Scenic's motion to recuse.

**B. Dismissal of Eight Counts From Scenic's Third Amended Complaint**

Scenic next argues the district court erred in dismissing eight new causes of action from Scenic's third amended complaint by (1) improperly applying state substantive law to the federal procedural question of joinder, (2) erroneously applying state law in determining seven of the eight counts sounded in tort and in dismissing those claims, and (3) abusing its discretion by dismissing the eight counts as a sanction. We review for abuse of discretion a district court's dismissal under Federal Rule of Civil Procedure 19(b). United States ex rel. Steele v. Turn Key Gaming, Inc., 135 F.3d 1249, 1251 (8th Cir. 1998) (per curiam). To the extent the district court justified its dismissal of the eight additional counts as a sanction, we also review for abuse of discretion. Hairston v. Alert Safety Light Prods., Inc., 307 F.3d 717, 718 (8th Cir. 2002).

Scenic first contends where, as here, a district court sits in diversity, federal procedural law governs the dispute, see Erie R. Co. v. Tompkins, 304 U.S. 64 (1938), and thus, the district court improperly applied state substantive law to the federal procedural question of joinder in determining whether Arvest was a necessary and indispensable party. We agree with Scenic that "in a diversity case the question of joinder is one of federal procedural law." Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 125 n.22 (1968). Nonetheless, in determining the interests

-12-

of an outside party, state law may provide assistance. Id. ("To be sure, state-law questions may arise in determining what interest the outsider actually has, but the ultimate question whether, given those state-defined interests, a federal court may proceed without the outsider is a federal matter." (internal citation omitted)).

Such was the case here. Under Arkansas law, when an assignment is not authorized by statute, the assignor must be a plaintiff or a defendant. See Ark. Code Ann. § 16-61-112(a). "The plain words of this statutory requirement have been applied by the Supreme Court of Arkansas both where the assigned thing was based on contract and where on tort." Young v. Garrett, 149 F.2d 223, 228 (8th Cir. 1945) (footnotes omitted) (interpreting Pope's Dig. § 1306, the predecessor to Ark. Code Ann. § 16-61-112(a), and holding "assignments of [tort] claims are not authorized by any statute of Arkansas" (internal quotation marks omitted)). Scenic fails to cite any Arkansas statutory provisions authorizing the assignment of the eight additional claims asserted in Scenic's third amended complaint. Thus, because Scenic lacked standing to pursue the claims, Arkansas law required Arvest be made a party to the action. The addition of Arvest would then have destroyed diversity among the parties.

Furthermore, the assignment of Scenic's new causes of action in the third amended complaint were based on the second general assignment, which was not disclosed until the third day of trial. The circumstances surrounding the second general assignment troubled the district court: namely, the assignment's acknowledgment on April 14, 2006, the Friday before trial began, after the Intervenor Trustees alleged Superior had not assigned the new causes of action to Scenic and Scenic therefore lacked standing to sue on them. Arvest also refused to join in the action, thereby forcing Scenic to attempt to join Arvest as an involuntary plaintiff.

To preserve diversity jurisdiction, give the defendants a fair trial, and avoid creating an unstable relationship between Scenic's counsel and Arvest, the district court dismissed the eight new causes of action and allowed the case to proceed on the

-13-

remaining count. In doing so, the district court considered Scenic's failure to disclose the second general assignment as required under Federal Rule of Civil Procedure 26(a)(1)(B), and concluded, "Scenic's failure to comply with the Federal Rules was conscious, intentional, and willful[,] and that defendants have been prejudiced due to Scenic's dilatory conduct which prevented defendants from preparing for trial." We cannot say the district court abused its discretion in dismissing the eight new causes of action as a sanction. See Mann v. Lewis, 108 F.3d 145, 147 (8th Cir. 1997) (recognizing the right of parties not to suffer prejudice due to an opposing party's dilatory conduct, and noting the district court's dismissal power based on a party's failure to comply with the court's rules).

### C. Allocation of Burden of Proof

Scenic contends the district court erred by improperly placing the burden on Scenic to prove the New Board had authority to execute the mortgage and could bind Tabernacle. After reviewing de novo the allocation of the burden of proof, see Blodgett v. C.I.R., 394 F.3d 1030, 1035 (8th Cir. 2005), we find no error. In arguing the New Board had the requisite authority to represent, and therefore bind, Tabernacle, Scenic advanced an agency theory of liability. Under Arkansas law, "[t]he burden of proving an agency relationship lies with the party asserting its existence." Pledger v. Troll Book Clubs, Inc., 871 S.W.2d 389, 392 (Ark. 1994); see also Ark. Code Ann. § 16-40-101(a) ("The party holding the affirmative of an issue must produce the evidence to prove it.").

Even assuming for purposes of argument the district court erred in allocating the burden of proof to Scenic or in failing to shift the burden of proving lack of authority to the New Board, any error was harmless. Scenic failed to rebut the testimony of seven witnesses who testified Tabernacle's congregation did not hold a duly-called meeting for the purpose of voting to authorize the individual defendants specifically, or the New Board in general, to sign either the 1999 note and mortgage or the later modification to the 1999 mortgage. The evidence showed Tabernacle's

-14-

congregation did not approve, by a majority vote, any mortgage on Tabernacle's property, and that the New Board representatives were not properly elected trustees and thus did not have authority to bind Tabernacle. See, e.g., Blodgett, 394 F.3d at 1039 (finding any error in the trial court's failure to shift the burden of proof was harmless based on the weight of the evidence); see also Cigaran v. Heston, 159 F.3d 355, 357 (8th Cir. 1998) ("The shifting of an evidentiary burden of preponderance is of practical consequence only in the rare event of an evidentiary tie: If the evidence that the parties present balances out perfectly, the party bearing the burden loses.").

## D.     Exclusion of Evidence Regarding the New Board's Authority

Finally, Scenic argues the district court abused its discretion in excluding: (1) on relevancy grounds, evidence of conduct predating the 1999 mortgage; (2) for lack of foundation, documents describing persons as Tabernacle trustees under the theory Scenic had not shown Tabernacle elected those persons in accordance with its canons, bylaws, and procedures; and (3) as inadmissible settlement discussions, evidence that Tabernacle representatives discussed the delinquent loan with Scenic and agreed to execute a deed, in lieu of foreclosure, to cure the default. We review for abuse of discretion the district court's evidentiary rulings, "according such decisions substantial deference." Marmo v. Tyson Fresh Meats, Inc., 457 F.3d 748, 757 (8th Cir. 2006).

On multiple occasions during the trial, Scenic attempted to prove Tabernacle authorized the note and mortgage by showing a prior course of dealing among Superior, Tabernacle, and representatives of Tabernacle. Scenic contends the district court abused its discretion by concluding such evidence was irrelevant to the New Board's authority to bind Tabernacle. We disagree. Scenic's argument ignores the well-settled principles under Arkansas law regarding congregational church governance and under Tabernacle's own church canons that (1) congregational church affairs are determined by a majority vote of the church's members, (2) Tabernacle's executive power is vested in a board of trustees consisting of three members elected

-15-

at Tabernacle's annual meeting of the general assembly, and (3) the board of trustees may not mortgage real or personal property without the prior approval of a two-thirds majority vote of Tabernacle members present and voting at a meeting of the church for which notice of the proposed action was given. See Elston, 186 S.W.2d at 663 ("In congregational groups the affairs are determined by the vote of the majority of the members."); see, e.g., McCree, 101 S.W.3d at 278. A prior course of dealing is not relevant to matters of the New Board's authority to bind Tabernacle. Scenic presented no evidence (or proffered any, for that matter) demonstrating the individuals who signed the 2001 note and mortgage were properly elected by Tabernacle's congregation or that Tabernacle approved the mortgage of its property by a two-thirds vote of its members at a duly-called congregational meeting. Because evidence predating the disputed transaction was not relevant to establishing the New Board's authority to bind Tabernacle, the district court did not abuse its discretion in excluding the evidence.

Similarly, Scenic argues the district court abused its discretion by essentially requiring Scenic to prove the merits of its case–i.e., authorization–as a foundational predicate for the admission of certain evidence. However, to the extent Scenic sought to introduce evidence for the purpose of demonstrating the individuals who executed the multipurpose note and mortgage were trustees and thus were authorized to conduct business on behalf of Tabernacle, Scenic first had to demonstrate the individuals were authorized–that is, elected to the church's board of trustees at Tabernacle's annual meeting of the general assembly. There is no dispute Scenic failed to establish this foundational predicate. Given the unique legal principles applicable to this dispute concerning congregational church governance, the authority of trustees to encumber church property, and the origin or creation of such authority, the district court's decision to exclude Scenic's proffered evidence on the ground it lacked foundation was not an abuse of discretion.

-16-

Scenic's last claim of error concerns the district court's exclusion of evidence of conduct during settlement negotiations between Scenic and Tabernacle representatives. Scenic sought to introduce testimony that Tabernacle representatives offered to execute a warranty deed in lieu of foreclosure to cure the default, for the purpose of proving Tabernacle authorized the multipurpose note and mortgage and to rebut Tabernacle's claim otherwise. Contrary to Scenic's assertions, this type of evidence falls squarely within the parameters of Federal Rule of Evidence 408(a), which excludes the use of evidence of compromise and offers to compromise to prove liability for a disputed claim and also denies the admissibility of statements made in settlement negotiations. Thus, the district court did not abuse its discretion in excluding this evidence.

## III.    CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

BYE, Circuit Judge, concurring in part, dissenting in part.

I would reverse in part by holding the district court erred when it (1) dismissed eight counts from Scenic's third amended complaint, (2) improperly placed the burden of proof on Scenic to prove the New Board had authority to bind Tabernacle, and (3) excluded certain evidence at trial. I therefore write separately to dissent in part.

A

I join the majority opinion with respect to Part A. The district court did not abuse its discretion when it denied Scenic's motion to recuse the judge based on religious bias.

B

Federal law applies to issues of party joinder in a diversity case. The district court abused its discretion when it dismissed eight causes of action based on an Arkansas procedural statute. Moreover, the court abused its discretion when it further justified the dismissal as a sanction under Federal Rule of Civil Procedure Rule 41(b).

Questions of indispensable party joinder are procedural issues governed by federal law. Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 125 n.22 (1968). Rule 19 of the Federal Rules of Civil Procedure governs the joinder issue in this case. The district court's failure to apply Rule 19, and its application of Arkansas statute §16-61-112(a) instead, was an error of law. See Shetter v. Amerada Hess Corp., 14 F.3d 934, 937 (3d Cir. 1994) (holding, under Provident Tradesmens Bank & Trust Co., Rule 19 applied even in the face of a state statute mandating joinder). Under Rule 19(a), Arvest Bank is *not* a necessary party because it does not have an interest in the proceeding, will not be affected by any judgment rendered by the court, and is not needed for the court to fully dispose of the case. The court erred when it engaged in a Rule 19(b) indispensable party analysis after first finding Arvest Bank was not a necessary party under Rule 19(a). See Gwartz v. Jefferson Memorial Hosp. Ass'n, 23 F.3d 1426, 1430 (8th Cir. 1994); Shetter, 14 F.3d at 941.

The district court found Scenic's new causes of action were based on the Second Assignment, which was executed on the Friday before trial began. Because the Second Assignment occurred *after* the Third Amended Complaint was filed, it is logically impossible for the eight new causes of action in the Third Amended Complaint to be based on the Second Assignment, rather than on the First Assignment. Nevertheless, the district court dismissed Scenic's eight causes of action

-18-

as a Rule 41 sanction for non-compliance with Rule 26(a)(1)(B)[5], based on its failure to disclose an assignment which had not yet occurred.

The Eighth Circuit has recognized "dismissal with prejudice is an extreme sanction that should be used only in cases of willful disobedience of a court order or where a litigant exhibits a pattern of intentional delay" and requires a litigant "acted intentionally as opposed to accidentally or involuntarily." Hunt v. City of Minneapolis, 203 F.3d 524, 527 (8th Cir. 2000) (internal citation and quotation omitted). The district court's finding of willfulness in this case was not based on any facts in the record. The district court did not point to an order Scenic willfully disobeyed, nor does the record reveal any. The district court did not consider less severe penalties than dismissal. See Mann v. Lewis, 108 F.3d 145, 147 (8th Cir. 1997) (requiring a district court to "consider whether any less-severe sanction could adequately remedy the effect of the delay on the court and the prejudice to the opposing party."); Denton v. Mr. Swiss of Missouri, Inc., 564 F.2d 236, 239 (8th Cir. 1977) (recognizing the due process clause of the Fifth Amendment limits the power of courts to dismiss an action without affording a party the opportunity for a hearing on the merits).

The record contains no evidence Scenic's counsel was even aware of the Second Assignment, which was executed the Friday prior to the beginning of the trial. Scenic based its Third Amended Complaint on the First Assignment. The court abused its discretion is dismissing eight of Scenic's causes of actions under these facts.

---

[5]Rule 26(a)(1)(B) requires a party to disclose documents it may use to support its claims or defenses.

C

The district court also erred by improperly placing on Scenic the burden to prove the New Board had authority to execute the mortgage and could bind Tabernacle. Placing the burden of proof on the incorrect party is reversible error, unless it results in no prejudice. West Platte R-II School Dist. v. Wilson, 439 F.3d 782, 785 (8th Cir. 2006). The majority is correct in pointing out the weight of evidence at trial showed Tabernacle's congregation did not approve any mortgage on Tabernacle's property and the New Board representatives were not properly elected trustees. As a result of the district court's *improper* refusal to admit evidence Scenic offered to prove New Board's ability to bind Tabernacle, further discussed *infra* in Part D, the weight of the evidence favored the defendants. Because of the erroneous evidentiary rulings made by the district court in this case and its improper dismissal of Scenic's other common law claims, I cannot conclude the shifting of the evidentiary burden was a harmless error.

Under Arkansas law, Scenic made a prima facie case for recovery on the defaulted mortgage when it introduced evidence of the executed mortgage. Smith v. Ryan, 298 S.W. 498, 500 (Ark. 1927) (holding in an action on a note, the plaintiff made a prima facie case when he introduced the note, and defendant had the burden of proving the notes were invalid); Johnson v. Ankrum, 199 S.W. 897, 897 (Ark. 1917) (holding a signed note makes plaintiff's prima facie case for recovery and burden then shifts to defendant to show the note was executed without consideration). As an affirmative defense, defendants argue the mortgage is invalid. The burden of proving a defense of an affirmative nature is upon the defendant. Smith, 298 S.W. at 500. Under Arkansas law, the burden of proof is upon a person attacking the validity of the mortgage to show it is void and was executed without authority. Austin v. Dermott Canning Co., 34 S.W.2d 773, 778 (Ark. 1931). The district court erred when it placed the burden of proof on Scenic to prove New Board was authorized to enter into agreements on behalf of Tabernacle.

-20-

D

The district court abused its discretion, affecting the substantial rights of the parties, when it improperly excluded evidence: (1) on relevancy grounds, (2) for lack of foundation, and (3) as inadmissible settlement discussions. See Goss Intern. Corp. v. Man Roland Druckmaschinen Aktiengesellschaft, 434 F.3d 1081, 1098 (8th Cir. 2006) (standard).

The district court erred in refusing to admit evidence pertaining to conduct occurring before 1999, which showed a "course of dealing," as irrelevant. Under Federal Rule of Evidence 401, evidence is relevant if it has any tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence. United States v. Gianakos, 415 F.3d 912, 924 (8th Cir. 2005); Fed. R. Evid. 401. The evidence Scenic planned to introduce was intended to show the members of New Board had authority to enter agreements on behalf of Tabernacle, addressing the very core of the defendants' affirmative defense. The evidence the district court improperly excluded was relevant to several of Scenic's new claims, including, but not limited to, quasi-contract, unjust enrichment, and fraud. It was an abuse of discretion to exclude this evidence.

The district court refused to allow Scenic to introduce evidence describing persons as Tabernacle trustees without first proving the individuals were authorized to conduct business on behalf of Tabernacle. The court sustained defendant's objections to the evidence, which the defendants characterized as foundational, and excluded most of Scenic's exhibits, including the initial 1997 mortgage, the 1999 mortgage, the refinancing note, correspondence between Superior and the purported trustees regarding the 1999 mortgage and later modification, and Superior's business

-21-

records regarding its several transactions with Tabernacle. The district court had no basis for a finding of lack of foundation and improperly characterized its exclusion of evidence in that way. The practical effect of the court's ruling was to require Scenic to prove the merits of its case before it could admit evidence to support its claim. As discussed *supra* in Part C, the law does not require a plaintiff to first disprove a defendant's affirmative defense in order to present its case; the burden is on the defendant to prove it is entitled to the defense. Baumgartner v. Rogers, 345 S.W.2d 476, 478-79 (Ark. 1961); Rodgers v. Skow, 84 S.W.2d 611, 612-13 (Ark. 1935) (holding, in action on a note, the burden of proving affirmative defense that notes were void was on the defendant pleading the affirmative defense); Harbison v. Hammons, 167 S.W. 849, 850 (Ark. 1914) (holding, in an action on a note, burden of proof is on defendants to establish their affirmative defense not on the plaintiff to disprove it). The district court erred by placing the burden on Scenic to disprove Tabernacle's affirmative defense and by further requiring Scenic to prove the merits of its case as a foundational predicate for the admission of evidence.

Finally, the district court erred when it excluded evidence of discussions between Scenic and Tabernacle following the default on the loan as impermissible evidence of settlement discussions. Under Federal Rule of Evidence 408, not all evidence relating to settlement negotiations is necessarily inadmissible. The district court must determine the purpose for which the evidence is being proffered. While evidence introduced to prove "liability for or invalidity of the claim or its amount" is inadmissible, evidence being proffered for other purposes is admissible. Fed. R. Evid. 408. In this case, Scenic proffered evidence of discussions between Scenic and Tabernacle to show those persons who negotiated with Scenic purported to be representatives of both New Board and Tabernacle, not to prove Tabernacle defaulted on the note. Such evidence was admissible.

For the above reasons, I dissent in part.

_____